Justice Dirk Sandefur delivered the Opinion of the Court.
***401 ¶1 Plaintiff James M. Peeler appeals the judgment of the Montana Nineteenth Judicial District Court, Lincoln County, granting Defendants' Rocky Mountain Log Homes Canada, Inc. (Rocky Mountain) and White River Contracting, LLC (White River) motion to compel arbitration and dismiss the case. We address the following restated issues:
1. Whether the District Court erroneously concluded that the arbitration agreement required arbitration of matters within its scope rather than merely authorizing it as a matter of discretion upon timely demand?
***402 2. Whether the District Court erroneously failed to conclude that the Defendants equitably waived the right to arbitrate?
3. Whether the District Court erroneously compelled arbitration without consideration of a proposed declaratory judgment claim that would have raised threshold questions of substantive arbitrability?
4. Whether the District Court erroneously concluded that Peeler's non-contract claims were subject to arbitration?
5. Whether the District Court erroneously failed to conclude that, as a non-party to the agreement, Rocky Mountain lacked standing to enforce the arbitration agreement against Peeler?
¶2 We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Peeler is a Florida resident who owns property in Libby, Montana. As alleged, Rocky Mountain is a Montana business corporation and White River is a Montana limited liability company. Hamilton, Montana is the principal place of business for both companies.
¶4 In July 2013, Peeler and Rocky Mountain executed a "Plan Development Agreement" (Design Contract) for Rocky Mountain to design and produce construction plans for a custom log home on Peeler's property to be built by a third-party contractor. The Design Contract expressly contemplated that Rocky Mountain would manufacture and deliver the necessary log package to Peeler's property under a separate contract. By separate written agreement dated September 19, 2013, Peeler executed a written contract (Construction Contract) with Rocky Mountain's *916 affiliate, White River, to construct a finished "turn-[k]ey" home in accordance with the building plans produced by Rocky Mountain under the Design Contract. The Construction Contract specified a contract price of $817,655.06, completion in 2014, and that White River would provide all necessary materials and labor.[1] In contrast to the Design Contract which included no similar provision, the Construction Contract included an arbitration agreement, to wit:
All disputes, claims and questions regarding the rights and obligations of the parties under the terms of this Agreement are subject to arbitration. Either party may make a demand for ***403 arbitration by filing such demand in writing with the other party within 30 (thirty) days after the dispute first arises. Thereafter, binding arbitration shall be conducted by three arbitrators acting under the rules of commercial arbitration of the American Arbitration Association or such other method of arbitration as agreed upon between the parties.
Inter alia , the Construction Contract also included a "No Waiver" provision stating that:
The failure of either party ... to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions, but these shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.
¶5 Following a 2013 start, construction dragged on into 2016. Dissatisfied with the progress and quality of construction following unsuccessful attempts to resolve his concerns, Peeler filed a complaint against White River and Rocky Mountain in the Montana Nineteenth Judicial District Court on September 16, 2016. In pertinent part, the complaint stated that the "issues giving rise to this [c]omplaint involve a construction contract ... and related claims for negligence and other torts arising out of work performed on Plaintiff's property...." (Emphasis added.) The complaint asserted specific claims for breach of contract, contract bad faith, breach of various warranties, negligence, negligent misrepresentation, fraud, constructive fraud, tortious conversion, unjust enrichment, statutory unfair trade practices, and negligent infliction of emotional distress. None of the asserted claims challenged the validity or enforceability of the arbitration agreement in the Construction Contract. The complaint further asserted no independent claim against Rocky Mountain, only that, "[u]pon information and belief," Rocky Mountain and White River were "affiliated business entities, and therefore should be treated as one and the same."[2]
¶6 Peeler did not initially serve the complaint on White River or ***404 Rocky Mountain. Rather, by correspondence to White River dated October 6, 2016, Peeler declared the Construction Contract terminated based on various alleged material breaches of the contract and asserted negligence. White River disputed Peeler's allegations by correspondence dated October 19, 2016. A month later, Peeler served his previously filed complaint separately on White River and Rocky Mountain.
¶7 By motion filed December 30, 2016, White River initially appeared in the action and moved pursuant to M. R. Civ. P. 12(b)(1) and § 27-5-115, MCA, for an order compelling arbitration and dismissing Peeler's complaint. On January 11, 2017, Peeler filed a *917 response opposing the motion on the asserted grounds that arbitration was not mandatory under the agreement and that White River in any event waived its right to compel arbitration by failing to timely demand it within 30 days after the dispute arose as referenced in the Construction Contract. Upon leave of court, Peeler filed a "supplemental response" bolstering his prior assertion that the Defendants waived the right to compel arbitration.
¶8 By notice filed March 2, 2017, Rocky Mountain first appeared in the action and joined in White River's motion to compel arbitration and dismiss. Peeler subsequently moved to strike Rocky Mountain's notice of joinder on the asserted ground that Rocky Mountain had no standing to compel arbitration under a contract to which it was not a party. In response, Rocky Mountain asserted that it had standing to compel arbitration on the Construction Contract based on Peeler's complaint allegations that the Defendants were affiliated entities who were "one and the same" and that Rocky Mountain was liable on the Construction Contract for the asserted defects. Though acknowledging that he may need to amend his complaint to state separate claims against Rocky Mountain upon further discovery, Peeler continued to maintain that Rocky Mountain had no standing to enforce the arbitration agreement in the Construction Contract despite the fact that he was suing Rocky Mountain on the Construction Contract.
¶9 Almost nine months after his response to Rocky Mountain's notice of joinder, while White River's motion to compel arbitration was still pending decision, Peeler moved for leave to amend his original complaint as manifested in an attached proposed amended complaint. Generally characterizing the included claims as "breaches of contract, negligence, and other tort claims, including [a claim for] property damage," the proposed amended complaint: (1) more particularly stated breach of contract, contract bad faith, breach of contract warranties, negligence, negligent misrepresentation, fraud, ***405 constructive fraud, statutory unfair trade practices, negligent infliction of emotional distress, and punitive damages claims separately against each Defendant based on or related to their respective Design and Construction Contracts; (2) stated a declaratory judgment claim against Rocky Mountain asserting that a waiver provision in the Design Contract was void; (3) stated a declaratory judgment claim against White River asserting that it waived the right to compel arbitration and that the arbitration provision was in any event "void as a matter of public policy"; and (4) stated claims against both Defendants for "joint and several liability" and "pierc[ing] the corporate veil." However, as in his original complaint, the proposed amended complaint again ambiguously alleged that Rocky Mountain and White River were "affiliated business entities, and therefore should be treated as one and the same." On January 17, 2018, with decisions on White River's motion to compel arbitration and Peeler's motion for leave to amend still pending, Peeler filed an "amended motion" for leave to file a "revised" amended complaint based on the asserted recent discovery that White River and Rocky Mountain were "part of a larger conglomerate," that "it appear[ed] that [Rocky Mountain] operated on its own," that "Montana Sundown, Inc. did business as 'Rocky Mountain Log Homes,' " and that White River and Rocky Mountain, "together with their individual shareholders, bear some liability in this case." Unlike before, Peeler did not attach a copy of the proposed revised amended complaint to his amended motion.[3]
¶10 On January 24, 2018, without reference to Peeler's successive motions for leave to file an amended complaint, the District Court issued a written order granting White River's motion to compel arbitration and accordingly dismissed the action. In accordance with Peeler's complaint averment, the court "treated" White River and Rocky Mountain "as one and the same." Characterizing Peeler's waiver assertion as an issue of "procedural arbitrability" rather than "substantive arbitrability," the court granted the motion pursuant to *918 Mont. Pub. Empl's Ass'n v. City of Bozeman , 2015 MT 69, 378 Mont. 337, 343 P.3d 1233 (MPEA) ; Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ; and Int'l Bhd. of Elec. Workers v. Mont. Power Co. , 280 Mont. 55, 929 P.2d 839 (1996). Peeler timely appeals. ***406 STANDARD OF REVIEW
¶11 We review district court rulings on motions to compel arbitration de novo for correctness under the governing standards of the Federal Arbitration Act (FAA), 9 U.S.C. § 2 et seq. , or the Montana Uniform Arbitration Act (MUAA), § 27 -5-111, MCA et seq. , as applicable. Lenz v. FSC Secs. Corp. , 2018 MT 67, ¶ 12, 391 Mont. 84, 414 P.3d 1262. When a district court grants or denies a motion to compel arbitration in response to a motion to dismiss or for summary judgment, we review the order for correctness under the applicable standards of M. R. Civ. P. 12(b) or 56. Lenz , ¶ 12. When a court grants or denies a motion to compel arbitration upon an evidentiary hearing,[4] we review its findings of fact for clear error and its conclusions of law de novo for correctness. Lenz , ¶ 12.
DISCUSSION
¶12 The FAA governs arbitration agreements related to interstate commerce. 9 U.S.C. § 2 ; Southland Corp. v. Keating , 465 U.S. 1, 10-17, 104 S.Ct. 852, 858-61, 79 L.Ed.2d 1 (1984) ; Zigrang v. U.S. Bancorp Piper Jaffray, Inc. , 2005 MT 282, ¶ 10, 329 Mont. 239, 123 P.3d 237. The MUAA governs arbitration agreements subject to Montana law but not subject to the FAA. See §§ 27-5-111 and -114(1), MCA. Under both Acts, a written contract or contract provision by which the parties agree to resolve a future controversy by arbitration is valid and enforceable except upon "grounds as exist at law or in equity for the revocation" of contracts. 9 U.S.C. § 2 ; § 27-5-114(2), MCA. The FAA encompasses a discrete body of substantive federal law mandating enforcement of arbitration agreements within its scope regardless of any contrary substantive or procedural state law. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The MUAA similarly constitutes a discrete statutory overlay of general contract law recognizing and favoring arbitration agreements subject to Montana law. See § 27-5-114, MCA.
¶13 On application of a party for enforcement of an arbitration ***407 agreement governed by the FAA or MUAA, a district court must proceed summarily to determine the issue and shall accordingly order or deny arbitration. 9 U.S.C. §§ 2 - 4 ; § 27-5-115(1), MCA ; Southland Corp. , 465 U.S. at 16-17, 104 S.Ct. at 861 (substantive provisions of FAA binding on state courts pursuant to 9 U.S.C. § 2 and Supremacy Clause of U.S. Constitution but subject to state law procedural rules); Rosenthal v. Great W. Fin. Sec. Corp. , 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1067-70 (1996) (state law procedure for summary enforcement of arbitration agreements not in conflict with federal forum and jury trial requirements of 9 U.S.C. §§ 3 - 4 ). Since the question of whether the FAA or MUAA governs is not at issue on appeal,[5] we will review the issues presented without differentiation between the FAA and MUAA to the extent possible.
¶14 1. Whether the District Court erroneously concluded that the arbitration agreement required arbitration of matters within its scope rather than merely authorizing it as a matter of discretion upon timely demand?
¶15 Because "arbitration is a matter of contract," a court generally cannot *919 require a party to arbitrate any matter that the party has not agreed to arbitrate. Howsam , 537 U.S. at 83, 123 S.Ct. at 591 (quoting United Steelworkers v. Warrior & Gulf Nav. Co. , 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) ). In determining the threshold question of whether a matter is subject to arbitration, state and federal courts distinguish between two types of arbitrability-substantive arbitrability and procedural arbitrability. John Wiley & Sons, Inc. v. Livingston , 376 U.S. 543, 557-59, 84 S.Ct. 909, 918-19, 11 L.Ed.2d 898 (1964) ; MPEA , ¶ 6. Substantive arbitrability is the gateway question of whether a party agreed to arbitrate a particular dispute or type of dispute. MPEA , ¶ 7 (citing Howsam , 537 U.S. at 84, 123 S.Ct. at 592 ). Substantive arbitrability involves two distinct considerations-whether the parties formed a valid and enforceable agreement to arbitrate and whether the terms of the arbitration agreement require arbitration of the particular matter or type of matter at issue. Howsam , 537 U.S. at 84, 123 S.Ct. at 592 ; MPEA , ¶ 7. Except as clearly and unequivocally otherwise provided by contract, the question of whether an issue is substantively arbitrable is a threshold question for judicial determination. ***408 Howsam , 537 U.S. at 83-84, 123 S.Ct. at 591-92 ; AT&T Techs., Inc. v. Commc'ns Workers of Am. , 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ; MPEA , ¶¶ 7, 14 ; Greater Missoula Area Fed'n of Early Childhood Educators v. Child Start, Inc. , 2009 MT 362, ¶ 26, 353 Mont. 201, 219 P.3d 881.
¶16 When an arbitration agreement is included as part of a larger contract, the court must determine its threshold validity and enforceability based on generally applicable contract principles but with narrow focus on the agreement to arbitrate without regard for the validity or enforceability of the balance of the larger contract. Buckeye Check Cashing, Inc. v. Cardegna , 546 U.S. 440, 445-46, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006) ; Prima Paint Corp. v. Flood & Conklin Mfg. Co. , 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).[6] Accord Kingston v. Ameritrade, Inc. , 2000 MT 269, ¶ 15, 302 Mont. 90, 12 P.3d 929 ; Vukasin v. D.A. Davidson & Co. , 241 Mont. 126, 131-32, 785 P.2d 713, 717 (1990). Assertions of fraud, illegality, or other contract defenses affecting the validity or unenforceability of a larger contract to which the parties otherwise mutually agreed do not defeat an otherwise valid agreement to arbitrate and are thus matters for determination by an arbitrator in accordance with the agreement. Buckeye , 546 U.S. at 448-49, 126 S.Ct. at 1210 ; Martz v. Beneficial Mont., Inc. , 2006 MT 94, ¶¶ 11-18, 332 Mont. 93, 135 P.3d 790. See also Thompson , ¶¶ 12-19 (distinguishing lack of mutual assent due to failure of condition precedent to contract formation as a threshold matter for judicial determination from question for arbitrator as to whether balance of the agreement was void or voidable). This statute-based severability of arbitration agreements prevents a party who validly agreed to arbitrate from subsequently avoiding arbitration by pleading claims asserting that the larger contract, or other aspects thereof, are void or voidable due to fraud, illegality, or other contract defect not specifically related to the agreement to arbitrate. See Buckeye , 546 U.S. at 448-49, 126 S.Ct. at 1210. In the presence of a valid agreement to arbitrate, the remaining aspect of substantive arbitrability is simply a matter of ***409 contract construction as to whether the parties agreed to arbitrate the dispute or type of dispute at issue.
¶17 Here, the Peeler-White River Construction Contract clearly and unequivocally provided that "[a ]ll disputes, claims and questions regarding the rights and obligations of the parties under the terms of this Agreement are subject to arbitration." (Emphasis added.) Peeler does not allege that he *920 and White River did not validly form a contract in the first place, that he did not assent to inclusion of the arbitration provision in the contract, or that White River specifically induced him to agree to the arbitration provision by way of fraud or other illegal means. To the contrary, in his original and proposed amended complaints, Peeler seeks to sue on the Construction Contract for breach of express and implied duties and warranties, breaches of related but distinct duties that arise or exist independently as matters of statutory or common law, and declaratory judgment construing the meaning or effect of contract provisions. Putting aside for the moment the question of whether, and to what extent, Rocky Mountain may enforce the arbitration agreement against him, Peeler did not raise any challenge in District Court regarding the validity or enforceability of the arbitration agreement apart from the balance of the larger contract. Rather, as a matter of contract construction, Peeler merely asserted that the express terms of the arbitration agreement made arbitration optional at the discretion of either party upon timely demand.
¶18 To the extent "ascertainable and lawful," courts must construe contracts to effect the mutual intent of the parties at the time of contracting. Section 28-3-301, MCA. In construing particular contract provisions, a court must generally construe unambiguous contract language in accordance with its plain meaning in ordinary usage. Section 1-4-107, MCA. However, we must also construe particular provisions in the context of the agreement as a whole, giving consistent meaning and effect to all provisions as possible. Sections 1-4-101, MCA ; §§ 28-3-201 through -202, MCA.
¶19 Except as otherwise clearly and unequivocally provided, contract language broadly requiring arbitration of all disputes "arising hereunder" or "out of" the larger contract extend to and encompass arbitration of all claims predicated on alleged facts that relate to the contract object or duties regardless of whether technically based on legal duties that arise from the contract or those that arise independently as a matter of law. Battaglia v. McKendry , 233 F.3d 720, 727 (3rd Cir. 2000) ; Gregory v. Electro-Mech. Corp. , 83 F.3d 382, 384-86 (11th Cir. 1996) ;
***410 Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd. , 1 F.3d 639, 641 (7th Cir. 1993) ; EFund Capital Partners v. Pless , 150 Cal.App.4th 1311, 59 Cal.Rptr.3d 340, 353-54 (2007). Accord State ex rel., Bullock v. Philip Morris, Inc. , 2009 MT 261, ¶ 38, 352 Mont. 30, 217 P.3d 475 (Rice, J., dissenting). Here, the arbitration agreement expressly provided:
All disputes, claims and questions regarding the rights and obligations of the parties under the terms of this Agreement are subject to arbitration. Either party may make a demand for arbitration by filing such demand in writing with the other party within 30 (thirty) days after the dispute first arises. Thereafter, binding arbitration shall be conducted....
The first sentence clearly and unambiguously described the broad scope of matters that would be subject to arbitration. The language is plainly mandatory, not discretionary or permissive.
¶20 Without limiting the scope of substantive matters subject to arbitration, the second sentence then prescribed the procedural manner for initiating the arbitration process. In contrast to matters of substantive arbitrability, threshold "procedural questions which grow out of [a] dispute and bear on its final disposition" are matters of procedural arbitrability. MPEA , ¶ 8 ; John Wiley & Sons, Inc. , 376 at 557-59, 84 S.Ct. at 918-19. Matters of procedural arbitrability include issues of satisfaction of contract-specified procedural conditions precedent to arbitration and related issues of procedural waiver, timeliness, notice, laches, estoppel, and similar defenses that have no bearing on what issues or type of issues the parties agreed to arbitrate. Howsam , 537 U.S. at 884, 123 S.Ct. at 592; Greater Missoula , ¶ 26. Except as clearly and unequivocally otherwise provided by contract, matters of procedural arbitrability are matters for resolution by arbitration, not in court. Howsam , 537 U.S. at 83-84, 123 S.Ct. at 591-92 ; Greater Missoula , ¶ 26. Here, Peeler's assertion that the Defendants waived their right to compel arbitration by failing to timely demand it within 30 days of *921 the initial dispute is an assertion of procedural timeliness or waiver that neither limits nor otherwise affects the scope of substantive issues or types of issues the parties agreed to arbitrate. Whether a party waived the right to compel arbitration by failing to timely demand it in compliance with procedural requirements of the agreement is "a classic question of procedural arbitrability" for determination by an arbitrator rather than the court. MPEA , ¶ 10. Thus, Peeler's assertion of procedural timeliness or waiver based on the Defendants' failure to demand arbitration within 30 days from the date the dispute arose as specified in the agreement was a matter of procedural arbitrability for ***411 determination by the arbitrator in conjunction with the non-waiver provision of the contract and any other relevant legal or factual consideration. We hold that the District Court correctly concluded that, by its terms, the arbitration agreement required arbitration of all matters within its scope and that Peeler's procedural timeliness or waiver assertion was a matter of procedural arbitrability for consideration in arbitration.
¶21 2. Whether the District Court erroneously failed to conclude that the Defendants equitably waived the right to arbitrate?
¶22 In a matter related but distinct from his assertion of procedural waiver, Peeler asserts that, as a matter of substantive arbitrability, the Defendants equitably waived the right to arbitrate by failing to demand arbitration until after he instituted this litigation. As a matter of equity, a party may implicitly waive a contract right by intentionally engaging in conduct inconsistent with that right. E.g. , Tynes v. Bankers Life Co. , 224 Mont. 350, 363, 730 P.2d 1115, 1123 (1986). Accord Thiel v. Johnson , 219 Mont. 271, 274-75, 711 P.2d 829, 831-32 (1985). A party asserting an equitable waiver has the burden of showing: (1) another's "knowledge of [an] existing right"; (2) conduct deliberately inconsistent with the right; and (3) resulting prejudice to the party asserting the waiver if the other is allowed to reverse course and subsequently assert the right. R.C. Hobbs Enters., LLC v. J.G.L. Distrib., Inc. , 2004 MT 396, ¶ 24, 325 Mont. 277, 104 P.3d 503 ; VanDyke Constr. Co., Inc. v. Stillwater Mining Co. , 2003 MT 279, ¶ 15, 317 Mont. 519, 78 P.3d 844 (citing Firestone v. Oasis Telecomms. , 2001 MT 297, ¶ 18, 307 Mont. 469, 38 P.3d 796 ).
¶23 When asserted as a specific challenge to the enforceability of the arbitration agreement itself, equitable waiver is a gateway matter of substantive arbitrability for judicial determination. See Buckeye , 546 U.S. at 448-49, 126 S.Ct. at 1210. However, due to the express federal and state statutory preferences for arbitration, proof of equitable waiver of an otherwise valid agreement to arbitrate must be clear, convincing, and unequivocal. Britton v. Co-op Banking Grp. , 916 F.2d 1405, 1412 (9th Cir. 1990) ; Fisher v. A.G. Becker Paribas Inc. , 791 F.2d 691, 694 (9th Cir. 1986) ; Stewart v. Covill & Basham Const., LLC , 2003 MT 220, ¶ 8, 317 Mont. 153, 75 P.3d 1276 ; Downey v. Christensen , 251 Mont. 386, 389, 825 P.2d 557, 558 (1992). We have considered application of equitable waiver theory to arbitration agreements on a number of occasions. See MPEA , ¶¶ 17-19 (no equitable waiver from four-year delay in filing action to compel arbitration where party initiated litigation only to compel arbitration rather than litigate merits of the dispute);
***412 Holm-Sutherland Co., Inc. v. Town of Shelby , 1999 MT 150, ¶¶ 21-34, 295 Mont. 65, 982 P.2d 1053 (right to arbitrate waived by active participation in litigation on merits of the dispute until shortly before trial regardless of initial assertion of right by affirmative defense at outset of litigation); Downey , 251 Mont. at 389-92, 825 P.2d at 558 (no equitable waiver from answer on the merits, assertion of counterclaim, and participation in limited pretrial discovery prior to motion to compel where party asserted right to arbitrate as affirmative defense and opposing party failed to show sufficient prejudice). We review district court determinations regarding equitable waiver of the right to arbitrate de novo. Stewart , ¶ 8.
¶24 Here, Peeler has shown no substantial basis upon which to conclude that either Defendant engaged in affirmative conduct inconsistent with the right to arbitrate. At most, the Defendants failed to demand arbitration until the need definitely arose-when *922 Peeler sued them in disregard of the arbitration agreement. At no time did either Defendant disclaim arbitration or make any statement manifesting an affirmative intent to forego it. Both properly asserted the right to arbitrate upon their respective initial appearances in this action by way of motion to compel arbitration and dismiss. While decision pended on their motion to compel under M. R. Civ. P. 12(b), neither Defendant filed an answer, asserted a counterclaim, demanded a trial, or otherwise engaged in litigation in furtherance of judgment on the merits. Efforts to informally resolve the dispute with Peeler including, inter alia , participating in mediation, do not constitute affirmative acts or conduct inconsistent with the right to arbitrate rather than litigate. Defendants' responses in opposition to Peeler's efforts to forego or avoid arbitration likewise evinced no intent to forego arbitration.
¶25 Peeler's equitable waiver theory similarly fails on the prejudice element. He asserts that the Defendants' failure to sooner demand arbitration substantially prejudiced his right to a jury trial and will now further render wasted the substantial costs expended on litigation to date. However, this asserted prejudice is self-inflicted. Peeler, not the Defendants, chose to institute litigation in disregard of the clear and unequivocally broad arbitration agreement. He is also exclusively responsible for pleading Construction Contract-based claims jointly against White River and Rocky Mountain as "one and the same." Peeler simply failed to demonstrate the requisite elements of an equitable waiver in District Court. We hold that the District Court did not erroneously fail to conclude that the Defendants equitably waived the right to arbitrate.
¶26 3. Whether the District Court erroneously compelled arbitration ***413 without consideration of a proposed declaratory judgment claim that would have raised threshold questions of substantive arbitrability?
¶27 Nine months after responding in opposition to White River's still-pending motion to compel arbitration, Peeler filed a motion for leave to file an amended complaint based on the assertion that "the evidence submitted thus far [warranted] an amendment to the [c]omplaint."[7] As attached to the motion, the proposed amended complaint asserted, inter alia , a new declaratory judgment claim against White River asserting that the arbitration agreement was "void as a matter of public policy," arbitration was not mandatory under the terms of the agreement, and White River in any event waived its right to arbitration by failing to timely exercise it in accordance with the second sentence of the agreement. For reasons unclear on the record, the District Court did not address or reference Peeler's motion to amend prior to granting White River's motion to compel arbitration based on Peeler's original complaint allegations.
¶28 We may affirm a judgment for any reason supported by law and the record that does not expand the relief granted by the lower court. Thigpen v. Roberts , 468 U.S. 27, 29-30, 104 S.Ct. 2916, 2918, 82 L.Ed.2d 23 (1984). Accord Whitcomb v. Beyerlein , 84 Mont. 470, 474, 276 P. 430, 432 (1929) ; Lepley v. City of Ft. Benton , 51 Mont. 551, 558, 154 P. 710, 712 (1916). After expiration of specified deadlines for filing an amended pleading as a matter of course, a party may amend a complaint only upon written consent of the opponent or prior leave of court. M. R. Civ. P. 15(a)(2) ; Priest v. Taylor , 227 Mont. 370, 377-79, 740 P.2d 648, 652-54 (1987). The court must freely allow amendment "when justice so requires." M. R. Civ. P. 15(a)(2) ; Hobble-Diamond Cattle Co. v. Triangle Irrigation Co. , 249 Mont. 322, 325, 815 P.2d 1153, 1155 (1991).
¶29 However, M. R. Civ. P. 15(a) does not require amendment as a matter of right in every case. Allison v. Town of Clyde Park , 2000 MT 267, ¶ 20, 302 Mont. 55, 11 P.3d 544 ; Stundal v. Stundal , 2000 MT 21, ¶ 13, 298 Mont. 141, 995 P.2d 420. A court may properly deny amendment of a pleading if the proposed amendment would be futile as a matter of law.
*923 Citizens Awareness Network v. Mont. Bd. of Envtl. Review , 2010 MT 10, ¶ 16, 355 Mont. 60, 227 P.3d 583 ; Reier Broad. Co. v. Mont. State Univ.-Bozeman , 2005 MT 240, ¶ 8, 328 Mont. 471, 121 P.3d 549, 551 ;
***414 Hawkins v. Harney , 2003 MT 58, ¶ 39, 314 Mont. 384, 66 P.3d 305 ; Stundal , ¶ 12 ; Bowen v. McDonald , 276 Mont. 193, 201, 915 P.2d 201, 206 (1996) ; Hobble-Diamond Cattle Co. , 249 Mont. at 325, 815 P.2d at 1155-56 ; Lindey's, Inc. v. Prof'l Consultants, Inc. , 244 Mont. 238, 242, 797 P.2d 920, 923 (1990) (quoting Foman v. Davis , 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (construing Fed. R. Civ. P. 15(a) ) ). Except in extraordinary circumstances, courts should not allow belated amendment of pleadings as a means to defeat a potentially dispositive motion absent a showing that the party could not have earlier sought amendment upon reasonable diligence. Peuse v. Malkuch , 275 Mont. 221, 227-28, 911 P.2d 1153, 1156-57 (1996). Such practice generally contravenes the central purpose of the Rules of Civil Procedure for a "just, speedy, and inexpensive determination" of actions on the merits. M. R. Civ. P. 1. See Stanford v. Rosebud Cty. , 254 Mont. 474, 477-78, 839 P.2d 93, 95-96 (1992). While M. R. Civ. P. 15(a) generally contemplates liberal amendment of pleadings, we will reverse a denial of a motion to amend a pleading only upon finding an abuse of discretion under the circumstances of a particular case. Edgewater Townhouse Homeowner's Ass'n v. Holtman , 256 Mont. 182, 187, 845 P.2d 1224, 1227 (1993). While courts generally may not "rule on the potential merits" of an arbitrable claim when deciding whether the parties validly agreed to arbitrate, Kalispell Educ. Ass'n v. Bd. of Trs. , 2011 MT 154, ¶¶ 17-20, 361 Mont. 115, 255 P.3d 199 (citing AT&T Techs. , 475 U.S. at 649, 106 S.Ct. at 1419 ), a court may nonetheless consider the threshold legal sufficiency of a proposed claim under the standards of M. R. Civ. P. 15(a). Otherwise, a party could defeat a valid agreement to arbitrate, and a meritorious motion to compel, merely by pleading a new or amended claim around the arbitration agreement without consideration of the threshold standards for amendment of pleadings.
¶30 Here, Peeler's proposed claim for declaratory judgment that the arbitration agreement was merely permissive was no more than a cursory restatement of the same argument made earlier in opposition to White River's motion to compel arbitration. As shown here, the assertion was futile as a matter of law on the face of the Construction Contract attached to Peeler's complaint. As similarly shown here, Peeler's additional proposed claim for declaratory judgment that the Defendants waived the right to arbitrate by failing to timely exercise it as specified in the agreement simply raised an issue of procedural arbitrability, rather than substantive arbitrability, and was thus similarly futile as a matter of law.
¶31 Peeler's proposed amended complaint further included a claim for a sweeping declaratory judgment that the subject arbitration ***415 agreement was "void as a matter of public policy." However, as included in the attachment to Peeler's complaint, the arbitration agreement was a simple, clear, and unambiguous agreement to arbitrate all prospective "disputes, claims and questions regarding the rights and obligations of the parties under the terms of" the larger agreement. In clear, unequivocal, and unmistakable statements of the respective public policies of the United States and the State of Montana, the FAA and MUAA authorize and strongly favor such agreements. See 9 U.S.C. § 2 ; § 27-5-114(2), MCA ; Southland Corp. , 465 U.S. at 10, 104 S.Ct. at 858 ; Global Client Sols., LLC v. Ossello , 2016 MT 50, ¶ 21, 382 Mont. 345, 367 P.3d 361. The arbitration agreement was thus facially valid and the proposed amended complaint was devoid of any well-pled factual averments upon which the arbitration agreement could otherwise conceivably violate public policy. See , e.g. , Kelker v. Geneva-Roth Ventures, Inc. , 2013 MT 62, ¶ 58, 369 Mont. 254, 303 P.3d 777 (Baker, J. dissenting).
¶32 Distinct from a challenge to the enforceability of an arbitration agreement as a whole under Prima Paint 's severability rule, a party seeking to avoid arbitration may more narrowly challenge the enforceability of a delegation provision included in an arbitration agreement. See *924 Rent-A-Center, W., Inc. v. Jackson , 561 U.S. 63, 70-76, 130 S.Ct. 2772, 2777-81, 177 L.Ed.2d 403 (2010). A delegation provision or clause is a provision of an arbitration agreement wherein, in addition to the parties' base agreement to arbitrate a specified scope of issues arising independent of the arbitration agreement, the parties further agree to also arbitrate any gateway issues of arbitrability (i.e., issues regarding the threshold enforceability or interpretation of the arbitration agreement itself) that would otherwise be matters of contract for judicial determination. Rent-A-Center , 561 U.S. at 68-70, 130 S.Ct. at 2777-78. When an arbitration agreement includes a delegation provision, the delegation provision is itself severable from the arbitration agreement and any asserted challenge to the enforceability or application of the larger arbitration agreement is a matter for the arbitrator absent a specific challenge to the threshold enforceability or interpretation of the severed delegation provision under generally applicable contract principles. Rent-A-Center , 561 U.S. at 70-76, 130 S.Ct. at 2777-81.
¶33 In Rent-A-Center , a plaintiff asserting an employment discrimination claim against his employer sought to avoid an arbitration agreement in his employment contract on the asserted grounds that the arbitration agreement was itself unconscionable under Nevada law.
***416 Rent-A-Center , 561 U.S. at 65-66, 130 S.Ct. at 2775-76. In pertinent part, the arbitration agreement included two separate provisions-the parties' agreement to arbitrate a specified scope of matters arising independent of the arbitration agreement and a separate delegation provision providing that the arbitrator would "have exclusive authority to resolve any dispute relating to the ... enforceability ... of [the arbitration agreement] including, but not limited to any claim that all or any part of [the arbitration agreement] is void or voidable." Rent-A-Center , 561 U.S. at 68, 130 S.Ct. at 2777 (internal citation omitted). Noting that the asserted arbitrability defense challenged the enforceability of the arbitration agreement as a whole without specific challenge to the enforceability of the delegation provision, the Supreme Court held that the district court correctly granted the employer's motion to dismiss and compelled arbitration of the dispute, including the assertion that the arbitration agreement was itself unconscionable. Rent-A-Center , 561 U.S. at 70-76, 130 S.Ct. at 2777-81.
¶34 We subsequently considered the application of Rent-A-Center 's layered severability rule in Global . In a third-party complaint asserted in the context of a debt collection action, the defendant-debtor asserted various tort claims against a third-party with whom she contracted for professional debt-reduction services. Global , ¶¶ 3-7. Inter alia , the third-party debt-services agreement included an agreement to arbitrate any claim or dispute based on or related to the larger agreement including "breach, termination, enforcement, interpretation or validity" of the agreement. Global , ¶ 13. However, the arbitration agreement also included language, asserted by the third-party as a delegation clause, further referencing arbitration of disputes regarding "the termination of the scope or applicability of [the] agreement to arbitrate." Global , ¶ 28. In disregard of the purported delegation clause, the district court ruled that the arbitration clause was unenforceable as an unconscionable contract of adhesion. See Global , ¶¶ 13-18.
¶35 On appeal, the third-party asserted, pursuant to Rent-A-Center , that the district court erroneously considered and adjudicated the debtor's challenge to the enforceability of the arbitration agreement rather than compelling arbitration of the matter pursuant to the purported delegation provision. Global , ¶¶ 25-28. Contrary to the third-party's assertion, we concluded that the language of the purported delegation provision was ambiguous, confusing, and not clarified by general reference in the agreement to the rules of the American Arbitration Association without specification of an applicable rule. Global , ¶¶ 29-33. Thus, concluding that the arbitration agreement ***417 did not include a "clear and unmistakable" delegation provision, we held that the district court did not erroneously consider the debtor's asserted arbitrability defense rather than leaving it for the arbitrator. Global , ¶¶ 29-33.
¶36 Here, under the circumstances of this case, the only possible pertinence of *925 Rent-A-Center 's layered severability rule is as a basis upon which Peeler's proposed void-for-public-policy claim could have been susceptible to a liberal construction that would have warranted judicial consideration of the claim for purposes of M. R. Civ. P. 15(a) prior to compelling arbitration. However, the language of the White River arbitration agreement is similar to the language of the agreements in Rent-A-Center and Global only to the extent that, like every prospective arbitration agreement, it stated the parties' base agreement to arbitrate a specified scope of future disputes that may arise independent of the arbitration agreement. Regardless of language generally providing that arbitration would proceed under the rules of the American Arbitration Association as in Global , the language of the arbitration agreement at issue, unlike the language of the agreements in Rent-A-Center and Global , makes no reference to arbitration of disputes regarding the threshold enforceability or application of the arbitration agreement itself. Thus, unlike in Rent-A-Center and Global , the White River arbitration agreement includes no indication of intent, ambiguous or not, to contract around or out of the general rule of substantive arbitrability as a threshold matter for judicial determination.
¶37 Delegation clause disputes arise in the narrow circumstance where the party seeking to avoid arbitration asserts that threshold arbitrability issues exist for judicial determination and the party seeking to compel arbitration counters that the language of the arbitration agreement reserved or delegated those issues to arbitration. See Global , ¶¶ 13-18 ; Rent-A-Center , 561 U.S. at 70-76, 130 S.Ct. at 2777-81. No such dispute exists here. The District Court addressed the cognizable arbitrability issues raised by Peeler and the Defendants neither assert that the arbitration agreement included a delegation provision, nor otherwise contest the court's authority to address the arbitrability issues addressed. Peeler simply asserts that the court erroneously failed to address his procedural waiver assertion and further erroneously decided the gateway arbitrability issues that it did address. Peeler's proposed one-line claim that "[t]he arbitration provision contained within the [Construction Contract] is void as a matter of public policy" was thus patently insufficient to raise a specific delegation provision challenge for judicial determination under ***418 Rent-A-Center 's layered severability rule.
¶38 Whether as a challenge to the enforceability of the arbitration agreement itself or as a narrower delegation clause challenge, Peeler's proposed void-for-public-policy claim was futile as a matter of law. We hold that the District Court did not erroneously fail to recognize that Peeler's proposed declaratory judgment claim raised threshold questions of substantive arbitrability subject to judicial determination prior to compelling arbitration.
¶39 4. Whether the District Court erroneously concluded that Peeler's non-contract claims were subject to arbitration?
¶40 Even if the arbitration agreement was enforceable and mandatory, Peeler asserts that his various non-contract claims were not subject to arbitration because the agreement expressly applied only to claims regarding "the rights and obligations of the parties under the terms of" the Construction Contract. He thus asserts that the agreement was not applicable to his non-contract claims based on alleged breaches of legal duties that existed or arose independent of the contract. Peeler further similarly asserts pursuant to § 27-5-114(2)(a), MCA, that his asserted negligent infliction of emotional distress claim was not subject to arbitration because contract arbitration provisions do not apply to "claims arising out of personal injury."
¶41 We generally will not review issues raised for the first time on appeal. Martz , ¶ 25. It is "fundamentally unfair" to hold a lower court in error "for failing to rule correctly on an issue" that a party did not afford the court the opportunity to address. Martz , ¶ 25 (quoting Paulson v. Flathead Conservation Dist. , 2004 MT 136, ¶ 37, 321 Mont. 364, 91 P.3d 569 ). Here, Peeler acknowledges that he did not raise either of these issues before the District Court but asserts that he is nonetheless entitled to raise them on appeal because the District Court raised them sua sponte as bases for *926 granting the motion to compel arbitration. We disagree.
¶42 Peeler relies on two cherry-picked references in the court's written order to the effect that his "claims fall within the arbitration clause." However, in context, the court noted that "all parties agree the claims fall within the arbitration clause" and that Peeler merely "argues the time limit for arbitrating was not met." After squarely addressing the narrow waiver issue actually raised, the District Court similarly stated in closing that:
the Agreement's arbitration clause is intended to address "all disputes, claims and questions regarding the rights and obligations of the parties under the terms of the Agreement." There appears to be no dispute that [Peeler's] claims fall within ***419 that provision. Nor has any party disputed the validity of the parties' agreement to arbitrate. As such, the dispute in this case is substantively arbitrable.
Quoting the express language of the arbitration agreement and framing the narrow matter at issue by noting that Peeler did not raise any challenge to the scope of the arbitration agreement in relation to the claims pled hardly constitutes a sua sponte raising and reliance on an unbriefed issue. Peeler's assertion that the District Court sua sponte raised and relied on an unbriefed issue as a basis for its decision on the narrow issue presented is a mischaracterization of the court's order. By failing to raise them in opposition to White River's motion to compel and dismiss, Peeler waived the right to appeal the issues of whether his asserted non-contract claims were substantively arbitrable within the express language of the arbitration agreement and, as applicable, the asserted limitation of § 27-5-114(2)(a), MCA. We hold that the District Court did not erroneously conclude that Peeler's non-contract claims were subject to arbitration.
¶43 5. Whether the District Court erroneously failed to conclude that, as a non-party to the agreement, Rocky Mountain lacked standing to enforce the arbitration agreement against Peeler?
¶44 In his motion to strike Rocky Mountain's notice of joinder in White River's motion to compel arbitration, Peeler asserted, inter alia , that Rocky Mountain had no standing to enforce the arbitration agreement against him because Rocky Mountain was not a party to the agreement. We disagree.
¶45 Peeler correctly asserts that a contract is generally binding only on and against the actual parties to the agreement. Fordyce v. Musick , 245 Mont. 315, 319, 800 P.2d 1045, 1047 (1990). It is equally true that arbitration is fundamentally "a matter of contract" and therefore courts generally may not force a party to arbitrate a matter, or with another party, in regard to which or whom the first party did not agree to arbitrate. Howsam, 537 U.S. at 83, 123 S.Ct. at 591 (quoting United Steelworkers , 363 U.S. at 582, 80 S.Ct. at 1353 ). Thus, a non-party to an arbitration agreement generally lacks standing to enforce the agreement against a party to the agreement. Dick Anderson Constr., Inc. v. Monroe Constr. Co. , 2009 MT 416, ¶¶ 46-50, 56, 353 Mont. 534, 221 P.3d 675.
¶46 However, as matters of generally applicable contract law, a non-party may enforce a contract against a party to the contract under certain narrow exceptions to the general rule including, inter alia , third-party beneficiary theory, incorporation by reference, agency theory, corporate veil piercing, assumption, waiver, and equitable ***420 estoppel. Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 631, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009) (quoting 21 Richard A. Lord, Williston on Contracts § 57:19, 183 (4th ed. 2001) ); Dick Anderson Constr. , ¶¶ 46-50 (third-party beneficiary theory); Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co. , 129 Cal.App.4th 759, 28 Cal.Rptr.3d 752, 756-57 (2005) (agency theory). Accordingly, as with any other contract, a non-party may enforce an agreement to arbitrate against a party where allowed by law under generally applicable contract principles. Carlisle , 556 U.S. at 630-32, 129 S.Ct. at 1901-02.
¶47 As a matter of equitable estoppel, a non-party to an arbitration agreement may enforce the agreement against a party if *927 (1) the party to the agreement asserts "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories" and (2) the "allegations of interdependent misconduct" are "founded in or intimately connected with" duties imposed by the larger agreement that includes the arbitration agreement. Goldman v. KPMG, LLP , 173 Cal.App.4th 209, 92 Cal.Rptr.3d 534, 541-42 (2009). Accord Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp. , 748 F.3d 249, 260-61 (5th Cir. 2014) ; Murphy v. DirecTV, Inc. , 724 F.3d 1218, 1229-33 (9th Cir. 2013) ; JLM Indus., Inc. v. Stolt-Nielsen SA , 387 F.3d 163, 177-78 (2nd Cir. 2004) ; Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc. , 10 F.3d 753, 757 (11th Cir. 1993), abrogated on other grounds by Carlisle , 556 U.S. 624 at 630-31, 129 S.Ct. at 1902, as recognized in Lawson v. Life of the S. Ins. Co. , 648 F.3d 1166, 1170-71 (11th Cir. 2011). Equitable estoppel thus "prevent[s] a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." Goldman , 92 Cal.Rptr.3d at 543-44. As long as sufficiently founded therein or intertwined therewith, the claims asserted by the party against the non-party need not rely exclusively on the terms of the larger agreement in which the arbitration agreement is included.
¶48 Here, Peeler's original complaint asserted that Rocky Mountain and White River were "affiliated business entities, and therefore should be treated as one and the same." It asserted various contract, tort, and statutory claims against them jointly-all expressly based on, or arising out of, the White River Construction Contract without reference to the Rocky Mountain Design Contract or conduct thereunder. Though his asserted compensatory tort and statutory claims were based on alleged breaches of duties that arise as matters of law independent of the duties imposed by the Construction Contract, all of the alleged factual breaches of the asserted contract, tort, and ***421 statutory duties were nonetheless based on the same or closely related factual acts or omissions. Overarching all of the asserted claims, Peeler's complaint asserted without qualification that the "issues giving rise to this [c]omplaint involve a construction contract ... and related claims for negligence and other torts arising out of work performed on Plaintiff's property...." (Emphasis added.)
¶49 Filed on the figurative eve before decision on the fully submitted, potentially dispositive motion to compel arbitration that had then been pending for nine months, Peeler's proposed amended complaint did not substantially change the nature or juxtaposition of the parties or the related nature of the factual bases for the claims against them. As a threshold matter, the proposed amended complaint indeed proposed to state claims separately against White River and Rocky Mountain based on the distinct natures, related duties, and alleged breaches of the separate Design and Construction Contracts. Nevertheless, the proposed amended complaint again alleged that White River and Rocky Mountain were "affiliated business entities, and therefore should be treated as one and the same." It generally "allege[d] breaches of contract, negligence, and other tort claims, including property damage, with respect to [Peeler's] home in Lincoln County, Montana." The proposed amended complaint further alleged facts indicating that the separate Design and Construction Contracts cross-referenced and were interdependent on each other and that the Defendants acted in concert with each other thereunder. Finally, in a separate proposed count expressly applicable to both Defendants without distinction or segregation as to claims or claimed damages, the proposed amended complaint further alleged that Rocky Mountain and White River were "jointly and severally liable" for Peeler's alleged damages.
¶50 Peeler's challenge to the arbitrability of his claims against Rocky Mountain came before the District Court on his motion to strike Rocky Mountain's notice of joinder in White River's motion to compel arbitration and dismiss. White River made the motion pursuant to M. R. Civ. P. 12(b)(1), and § 27-5-115, MCA. Unless it considers extrinsic facts pursuant to M. R. Civ. P. 56 or upon supplemental evidentiary hearing pursuant to § 27-5-115, MCA, a district court considering *928 a motion to dismiss and compel arbitration pursuant to M. R. Civ. P. 12(b) and § 27-5-115, MCA, must take all well-pled factual allegations set forth in the complaint as true. Kortum-Managhan v. Herbergers NBGL , 2009 MT 79, ¶ 12, 349 Mont. 475, 204 P.3d 693 ; Kingston , ¶ 9. Peeler's complaint, as well as his proposed amended complaint, manifestly stated claims against a party (White River) and a non-party (Rocky Mountain) based on allegations that were, as pled, substantially ***422 related and interdependent as matters of fact and law. Whether stated jointly against both Defendants in the original complaint, or as separately stated in part but nonetheless factually and legally linked in the proposed amended complaint, Peeler's allegations of related and interdependent misconduct by both parties were intimately founded in or intertwined with the Construction Contract object and duties on the facts and legal theories pled. Under these circumstances, we hold that the District Court did not erroneously fail to conclude that, as a non-party to the agreement, Rocky Mountain lacked standing to enforce the arbitration agreement against Peeler.
CONCLUSION
¶51 In summary, we hold that the District Court did not erroneously conclude that the arbitration agreement required arbitration of the matters within its scope rather than merely authorizing it as a matter of discretion upon timely demand. We hold that the District Court did not erroneously fail to conclude that the Defendants equitably waived the right to arbitrate. We hold that the District Court did not erroneously compel arbitration without consideration of Peeler's proposed declaratory judgment claim challenging the validity and enforceability of the arbitration agreement. We further hold that the District Court did not erroneously conclude that Peeler's asserted non-contract claims were subject to arbitration. Finally, we hold that the District Court did not erroneously fail to conclude that, as a non-party to the agreement, Rocky Mountain lacked standing to enforce the arbitration agreement against Peeler.
¶52 Affirmed.
We concur:
JAMES JEREMIAH SHEA, J.
INGRID GUSTAFSON, J.
BETH BAKER, J.
LAURIE McKINNON, J.

Contrary to the contemplation in the Design Contract, Peeler and Rocky Mountain did not ultimately enter into a separate contract for the manufacture and delivery of the necessary log package. White River apparently acquired the log package directly from Rocky Mountain and incorporated the cost into the Construction Contract.

Peeler's complaint further alleged that Rocky Mountain and White River both "agreed to Plaintiff's proposed contract changes," had duties and made representations under the Construction Contract , "breached the contract," did not perform work "as required under the contract," and breached warranties under the Construction Contract. Peeler's complaint and proposed amended complaint further referenced an email statement wherein Rocky Mountain referred to the proposed Construction Contract as "our agreement."

Without reference to the unknown content of his unattached revised amended complaint, Peeler's first amended complaint is the focus of his assertions of error regarding the District Court's disregard of proposed new or amended claims.

If a motion to compel arbitration is not amenable to disposition under M. R. Civ. P. 12(b) or 56, a district court may conduct summary proceedings to resolve genuine issues of material fact where the court "sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion...." Engalla v. Permanente Med. Grp., Inc. , 15 Cal.4th 951, 64 Cal.Rptr.2d 843, 938 P.2d 903, 915-16 (1997). Accord § 27-5-115(1), MCA ; Lenz , ¶¶ 3-9 ; Kloss v. Edward D. Jones & Co. , 2002 MT 129, ¶¶ 12-16, 310 Mont. 123, 54 P.3d 1 ; Chor v. Piper, Jaffray & Hopwood, Inc. , 261 Mont. 143, 147, 862 P.2d 26, 29 (1993). See also 9 U.S.C. §§ 2 -4.

The parties disputed the issue incident to their larger dispute regarding White River's motion to compel arbitration but only in regard to Peeler's claim for contract attorney fees, a matter not at issue on appeal.

The elements essential for formation of a valid agreement to arbitrate include identifiable parties capable of contracting, the parties' mutual assent to arbitrate, consideration, and, as applicable, satisfaction of any condition precedent to formation of the agreement to arbitrate or the larger agreement encompassing it. Lenz , ¶ 18 (general contract elements); Thompson v. Lithia Chrysler Jeep Dodge of Great Falls , 2008 MT 175, ¶¶ 12-19, 343 Mont. 392, 185 P.3d 332 (satisfaction of condition precedent to threshold contract formation). As applicable to arbitration agreements, federal and state statutory recognition of the validity and enforceability of arbitration agreements generally satisfies the additional legal requirement for a lawful contract object.

Peeler correctly points out that the Defendants did not oppose the motion but without mention of the fact that the Defendants had yet to answer his original complaint due to the continued pendency of their Rule 12(b) motion to compel and dismiss.