FILED

08/19/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0760

DA 24-0760

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2025 MT 184

MONARCH HEATING AND COOLING, LLC,

       Plaintiff and Appellee,

  v.

PETRA, INC.,

       Defendant and Appellant,

BOZEMAN WEST APARTMENTS LP;
SACCOCCIA LANDS III LLC;
BCRH AVION VENTURE LLC;
STOCKMAN BANK OF MONTANA;
WCW OLYMPUS BOZEMAN LLC; and
JOHN DOES 1-10,

       Defendants.

—————————————————————————————

BOZEMAN WEST APARTMENTS LP,
SACCOCCIA LANDS III LLC, and
PETRA, INC.,

       Counterclaimants,

  v.

MONARCH HEATING AND COOLING, LLC,

       Counter-Defendant.

—————————————————————————————

BOZEMAN WEST APARTMENTS LP; and
SACCOCCIA LANDS III LLC,

       Cross-Claimants

  v.

PETRA, INC.,

   Cross-Defendant.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
       In and For the County of Gallatin, Cause No. DV 24-126
       Honorable Andrew Breuner, Presiding Judge


COUNSEL OF RECORD:

   For Appellants:

   Edward J. Guza, Lance F. Carl, E.J. Guza & Associates, Bozeman, Montana

   For Appellee:

   Trent Baker, Datsopoulos, MacDonald & Lind, PC, Missoula, Montana

   Cherche Prezeau, Jackson Maynard, Christensen & Prezeau, PLLP, Helena, Montana

   Jon A. Wilson, Nathan A. Burke, Brown Law Firm, P.C., Billings, Montana

_____

      Submitted on Briefs: May 7, 2025

         Decided: August 19, 2025


Filed:

_____
        Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Petra, Inc. ("Petra") appeals from the Eighteenth Judicial District Court, Gallatin County's December 10, 2024 order denying its motion to stay proceedings and compel arbitration. Petra appeals the District Court's determination that it had waived its right to compel arbitration. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erred when it determined that Petra had waived its right to compel arbitration.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 13, 2021, Petra contracted with Bozeman West Apartments LP to serve as the primary contractor on an apartment complex building project. On July 23, 2021, Petra entered into a subcontract with Monarch Heating and Cooling, LLC ("Monarch") for Monarch to install the HVAC systems in the complex. Article 22.2 of the subcontract between Petra and Monarch contained an arbitration clause providing that "[a]ll other claims, disputes, and other matters in question between [Petra] and [Monarch] arising out of, or relating to, the Main Contract or this Subcontract . . . shall be decided by arbitration at [Petra's] sole and exclusive option." Monarch asserts that it began performance of the subcontract immediately, incurring costs in the process.

¶4 The relationship between Petra and Monarch deteriorated over the next three years, and on February 2, 2024, Monarch filed suit against Petra,[1] alleging breach of contract,

---

[1] Monarch also named several other defendants in its Complaint and Amended Complaint, but those defendants are not involved in this appeal.

breach of the covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment, and a violation of Montana's Prompt Payment Act. Monarch filed an Amended Complaint on April 25, 2024, and served it on Petra's registered agent on May 1, 2024. For reasons not clear from the record, Petra's registered agent did not forward the Amended Complaint on to Petra, and Petra did not file a timely answer to Monarch's Amended Complaint. On May 29, 2024, the District Court entered a default against Petra at Monarch's request.

¶5 After learning that Petra's agent had not provided Petra with the Amended Complaint, Monarch served Petra at its offices in Idaho on July 1, 2024. At Petra's request, Monarch stipulated to setting aside the entry of default and on July 25, 2024, Monarch and Petra filed a joint Stipulated Motion to Set Aside Entry of Default, which the District Court granted on July 30, 2024. Petra filed its Answer to Monarch's Amended Complaint, Counterclaim, and Request for Jury Trial on August 20, 2024. The Answer included 14 affirmative defenses, including "any and all affirmative defenses alleged by any other party." Monarch filed an answer to Petra's counterclaims on September 9, 2024. Petra filed an Amended Answer on September 10, 2024, which contained 16 affirmative defenses, including that "Monarch's claims in this litigation are subject to a valid and binding agreement to arbitrate."

¶6 On October 25, 2024, Petra moved to stay the proceedings and compel arbitration, citing Article 22.2 of the subcontract. The District Court denied Petra's motion on December 10, 2024. In its order, the District Court reasoned that Petra had "acted in a

4

deliberate manner that was inconsistent with invoking its right to demand arbitration" based, in part, on the facts that "Monarch did not have the right to invoke the arbitration requirement," "Petra secured and then filed its stipulated motion to set aside default" without asserting the right, and it did not assert the right until "nearly six (6) months after it was lawfully served with" the Amended Complaint. The District Court determined that Petra's delay in asserting its arbitration right prejudiced Monarch based on the costs Monarch incurred after it "was compelled to move for default; arrange for a second service of its complaint in Idaho; stipulate to setting aside default; wait nearly four (4) months for an answer to its [Amended Complaint]; be served with counterclaims; answer counterclaims; and then litigate the present motion to compel arbitration."

## STANDARD OF REVIEW

¶7      We review district court rulings on motions to compel arbitration de novo for correctness under the governing standards of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–402, or the Montana Uniform Arbitration Act ("MUAA"), Title 27, chapter 5, MCA, as applicable. *Peeler v. Rocky Mountain Log Homes Can., Inc.*, 2018 MT 297, ¶ 11, 393 Mont. 396, 431 P.3d 911.

## DISCUSSION

¶8      *Whether the District Court erred when it determined that Petra had waived its right to compel arbitration.*

¶9      A party asserting that another party has waived the right to arbitrate bears the burden of demonstrating (1) the other party's knowledge of the right to arbitrate, (2) acts by the other party that are inconsistent with the right to arbitrate, and (3) resulting prejudice.

5

*Mont. Pub. Emps. Ass'n v. City of Bozeman*, 2015 MT 69, ¶ 15, 378 Mont. 337, 343 P.3d 1233 (*MPEA*) (citing *Downey v. Christensen*, 251 Mont. 386, 389, 825 P.2d 557, 558 (1992)).  At the outset, Monarch asserts that we ought to modify the *Downey* factors in light of the United States Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708 (2022).  Petra responds that *Morgan* is inapplicable because it concerned the proper factors for courts to consider when deciding a motion to compel arbitration under the FAA, and this case is governed by the MUAA.

¶10    Because we ultimately agree with the District Court's determination that Monarch met its burden under *Downey*, we need not address *Morgan's* application to this case, and we decline to consider Monarch's argument on this point.  The parties do not dispute that Monarch met the first *Downey* factor because Petra concedes that it has always been aware of its option to insist on arbitration of Monarch's claims.  Therefore, the outcome of this case hinges on whether Petra acted inconsistently with its right to insist on arbitration, and whether it would prejudice Monarch to grant Petra's motion.

¶11    Petra argues that the District Court erred when it determined that Petra acted inconsistently with its right to arbitrate because the District Court based its determination on Petra's *inaction* rather than inconsistent *action*.  In *MPEA*, we determined that MPEA had not acted inconsistently with its right to arbitrate by failing to bring an action to compel arbitration for over four years.  *MPEA*, ¶ 18.  Petra's reliance on *MPEA* is misplaced.  In *MPEA*, MPEA's first action out of the gate was to file a case specifically to compel arbitration.  *MPEA*, ¶ 4.  MPEA not only acted consistently with its right to insist on

arbitration from the start of the case, it filed the case in order to enforce that right. As the District Court noted, Petra did not insist on its right to arbitrate until six months after it was lawfully served and almost four months after it was served at its Idaho headquarters.

¶12 Petra asserts that the actions it did take once it was aware of the case were at least as consistent with its insistence on its right as the actions we found sufficient in *Downey* itself. In opposing the motion to compel arbitration in *Downey*, the Downeys asserted four inconsistent actions demonstrated waiver:

> (1) [The opposing parties'] filing of formal answers rather than motions to dismiss or stay proceedings; (2) [opposing parties'] filing of a counterclaim; (3) [opposing parties'] participation in preparing a discovery schedule; and (4) [opposing parties'] participation in discovery before they filed motions to compel arbitration.

*Downey*, 251 Mont. at 390, 825 P.2d at 558. Petra asserts that it took even less inconsistent action than the opposing parties in *Downey* because it did not engage in the discovery process at all, even though its first response after the default was set aside to file an answer and counterclaims. But Petra leaves out of its narrative a critical distinction between this case and *Downey*—the Stipulated Motion to Set Aside Entry of Default. Monarch asserts, and Petra does not dispute, that Petra did not mention its intent to compel arbitration when it reached out to Monarch to secure its consent to set aside the default. Petra asserts that its failure to mention its intent to compel arbitration is immaterial because Monarch and the District Court both agreed that there was good cause to set aside the default. But we cannot know what arguments Monarch might have made against setting aside the default since Monarch did not feel the need to make them because Petra did not alert Monarch of

7

its intent to compel arbitration when it secured Monarch's stipulation. What we do know is that Petra sought to reenter the litigation with no mention of its intent to leave it again by compelling arbitration.

¶13 Yet another factor distinguishing this case from *Downey* is the Answer Petra filed almost a month later. In *Downey*, we found that the opposing parties' explicit invocation of arbitration in their answers excused their later participation because it put the Downeys on notice at the outset that the opposing parties intended to exercise their right. *Downey*, 251 Mont. at 390, 825 P.2d at 558. Although Petra's Answer identified 14 affirmative defenses it intended to rely on, the subcontract's arbitration clause was not among them. Petra asserts that the Answer implicitly included an arbitration defense by incorporating "any and all affirmative defenses alleged by any other party," because its co-defendants had asserted "[a]ll affirmative defenses set forth in M. R. Civ. P. 8(c)(1)," which includes arbitration. Petra's three-layered incorporation-by-reference argument hardly evinces a clear intent to invoke arbitration at a later date. Petra evidently did not think so either because it filed an Amended Answer in order to explicitly list arbitration among its defenses. The District Court did not err when it determined that Petra had acted inconsistently with its right to arbitrate because Petra sought to reenter the litigation with no mention of its intent to leave the litigation at a later date and reinforced that position with its subsequent Answer.

¶14 Petra argues that the District Court erred by determining that its invocation of its right to arbitrate would prejudice Monarch. We have found prejudice in this context where

8

the non-moving party has been forced to "spend both time and money in trial preparation," and lost a tactical advantage as a result of the moving party's actions inconsistent with its arbitration right. *Holm-Sutherland Co. v. Town of Shelby*, 1999 MT 150, ¶ 33, 295 Mont. 65, 982 P.2d 1053. There is no question that Monarch was forced to spend time and money responding to Petra's counterclaims, as evidenced by its September 9, 2024 answer. But the most significant prejudice consideration is Monarch's voluntary surrender of its default when it was under the impression that Petra would engage in the litigation. By stipulating to set aside the default, Monarch surrendered its right to argue under M. R. Civ. P. 55(c) that it would be prejudiced. While we may never know what Monarch might have argued had it known that Petra intended to raise the arbitration provision, there is no dispute that Monarch surrendered Petra's default before Petra advised that it intended to seek to compel arbitration. The District Court did not err when it determined that Petra's attempt to compel arbitration would prejudice Monarch.

## CONCLUSION

¶15    The District Court did not err when it determined that Petra had waived its right to compel arbitration after Petra reentered the litigation without asserting this right in either its Stipulated Motion to Set Aside Entry of Default or its Answer.

/S/ JAMES JEREMIAH SHEA

9

We Concur:

/S/ CORY J. SWANSON
/S/JIM RICE
/S/INGRID GUSTAFSON
/S/LAURIE MCKINNON