DA 07-0750

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 86

CYNTHIA R. JOHNSON,

      Plaintiff and Appellant,

  v.

DISTRICT VII, HUMAN RESOURCES DEVELOPMENT
COUNCIL and FIRST MONTANA TITLE COMPANY
OF BILLINGS,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-06-0142
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld,
            Billings, Montana

      For Appellees:

            Peter T. Stanley, Attorney at Law, Billings, Montana

                      Submitted on Briefs:  January 7, 2009

                                   Decided:  March 20, 2009

Filed:

                _____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Cynthia R. Johnson (Johnson) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, that required Johnson to pay District VII, Human Resources Development Council (HRDC) $16,612.09 in loan principal and interest, attorney fees, costs, and accrued interest. Johnson's appeal requires us to resolve the following issues:

¶2 Whether the District Court correctly converted HRDC's counterclaim of mutual mistake to an affirmative defense.

¶3 Whether the District Court properly denied Johnson's motion for partial summary judgment.

¶4 Whether the District Court properly granted affirmative relief to HRDC on its counterclaim of mutual mistake when the court deemed the counterclaim to be an affirmative defense.

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Johnson applied for a loan with HRDC to purchase an assisted living facility. Denise Jordan (Jordan), HRDC's loan officer, processed Johnson's loan application and determined that HRDC would require extra security on the loan. Johnson agreed to a second mortgage on her home and a lien on her business equipment.

¶6 Johnson received a letter from Jordan on February 20, 1998, notifying her that HRDC's loan review board had approved the loan at a 13% fixed interest rate. Jordan prepared all the loan documents including the loan agreement, promissory note (note), and Montana trust indenture.

2

¶7     Johnson and HRDC signed a loan agreement on February 26, 1998. The terms of the agreement included the principal sum of $21,661, for a five-year term with monthly payments at an interest rate of 13% per annum. Johnson and HRDC also signed the note on February 26, 1998. The terms of the note included the correct principal sum of $21,661 and monthly payments in the amount of $362.23 for sixty months. The note incorrectly listed an interest rate of *0.13%* per annum. Johnson conveyed her home by issuing a deed of trust on February 26, 1998, that listed First Montana Title Company (FMTC) as the trustee and HRDC as the lender.

¶8     Johnson discovered the interest rate error in March 2001 when she applied for a real estate loan. Johnson testified that she called HRDC about the discrepancy in the loan payoff amount. Johnson contended that Jordan asked her to sign new loan papers to repay the $16,000 deficiency at a nine percent interest rate. Johnson understood her balance at that time to be approximately $8,800.

¶9     Johnson further testified that she had been willing to pay half of the $16,000 on the grounds that the mistake had not been hers and that she timely had made her monthly payments. Johnson claimed that Jordan failed to return her telephone calls and that Jordan eventually referred her to HRDC's counsel, Peter Stanley (Stanley). Johnson testified that Stanley informed her that the error was a "scrivener's error," a mutual mistake, and thus Johnson owed the entire $16,000 loan balance.

¶10    Jordan testified that she had discovered the discrepancy in interest rates at approximately the same time as had Johnson. She immediately contacted Stanley. Jordan

3

testified that she had made the mistake in interest rates and monthly calculations due to her unfamiliarity with HRDC's newly acquired lending software. She simply had input the information incorrectly. Jordan denied Johnson's claim that she had offered Johnson a change in the loan's terms. She lacked authority to approve such a change without approval from the loan committee or HRDC's executive director. Jordan admitted, however, that she had been willing to compromise with Johnson on extending the length of the payment and reducing the interest rate on future payments based on the authority of the executive director.

¶11 Jordan further testified that Johnson made her last payment of $362.23 on March 5, 2003, leaving an outstanding loan balance of $11,066.44. Jordan calculated the 13% interest rate on that balance from March 5, 2003, through January 8, 2007, to yield an accrued interest amount of $5,545.65. Jordan thus calculated $16,612.09 as the total loan amount due. Jordan acknowledged that she was unaware of any demands by HRDC upon Johnson to pay any interest after her last payment.

¶12 Johnson requested both FTMC and HRDC to release the lien on her home about two years after her final payment. FTMC refused. FTMC required a reconveyance request from HRDC and proof that Johnson had satisfied the loan. HRDC refused to request a reconveyance or release the trust indenture mortgage on Johnson's home until Johnson repaid the full amount of the loan.

¶13 Johnson filed a complaint for damages on February 10, 2006, based upon HRDC's failure to reconvey her property and other actual damages arising from the lost potential to purchase and sell another piece of property due to the encumbrance on her property. HRDC

4

denied Johnson's entitlement to damages and filed a counterclaim in which it alleged mutual mistake. HRDC claimed that Johnson knew of the clerical error in the note and sought payment of the note's full amount and allowable attorney fees and costs.

¶14 Johnson moved for partial summary judgment on the issue of HRDC's liability. Johnson argued that the court should enforce the note's plain language. Johnson further asserted that the two-year statute of limitations had run on HRDC's mutual mistake counterclaim. HRDC asserted that the 0.13% interest was a "scrivener's error" and that the court may correct a mutual mistake made in the preparation of a legal document. HRDC argued that the longer eight-year statute of limitations for action on a written document should apply to its counterclaim.

¶15 The District Court denied Johnson's motion for partial summary judgment. The court determined that HRDC improperly had designated its claim of "mutual mistake" as a counterclaim. The court determined instead that the alleged "mutual mistake" constituted an affirmative defense for which no statute of limitations applied.

¶16 The District Court held a trial on January 8, 2007. The court determined that Johnson knew before applying for the loan that HRDC offered a 13% interest rate. The court opined that Johnson's claim of 0.13% interest rate conflicted with the nature of HRDC -- to offer funds to high-risk borrowers. The court further determined that Johnson had signed the loan agreement and that she had accepted the 13% interest rate. As a result, the court concluded that Johnson knew, or suspected, that the rate offered on the note mistakenly listed the interest rate at 0.13%.

5

¶17 The court ruled that Johnson's loan remained due and owing and therefore Johnson suffered no actual damages from HRDC's refusal to release the Montana trust indenture from her property. The court proceeded to revise the note pursuant to § 28-2-1611, MCA. This statute allows a revision when a party has committed a unilateral mistake that the other party knew, or suspected, at the time of contracting. The court concluded that 13% per annum over the five-year term of the loan constituted the appropriate interest rate to be listed on all documents involved in the transaction. The court held Johnson to be liable for the unpaid balance of $16,612.09. The court recognized that the note allowed HRDC to collect attorney fees and costs. The court's judgment included an award of $6,075 in attorney fees, $115 in costs, plus interest to HRDC. Johnson appeals.

## STANDARD OF REVIEW

¶18 We review de novo the District Court's decision to convert HRDC's counterclaim to an affirmative defense. *Yellowstone County v. Drew*, 2007 MT 130, ¶ 11, 337 Mont. 346, 160 P.3d 557. We review for correctness the district court's application of the statute of limitations. *Wing v. State ex rel. Dept. of Transp.*, 2007 MT 72, ¶ 9, 336 Mont. 423, 155 P.3d 1224.

## DISCUSSION

¶19 The unorthodox procedural history in the District Court continues on appeal as HRDC failed to file a brief. We must decide this matter solely on Johnson's brief and our review of the District Court record. As a result, the Court has been forced to look to legal authorities far beyond those presented by the parties to reach the correct result in this matter.

6

¶20    *Whether the District Court correctly converted HRDC's counterclaim of mutual mistake to an affirmative defense.*

¶21    The District Court relied upon M. R. Civ. P. 8(c) to support its decision to convert HRDC's mutual mistake counterclaim to an affirmative defense. Rule 8(c) permits a court to consider a mistakenly designated counterclaim to be an affirmative defense "if justice so requires." The court determined that justice required it to treat HRDC's mutual mistake counterclaim as an affirmative defense to avoid applying the two-year statute of limitations set forth in § 27-2-203, MCA, to HRDC's mutual mistake counterclaim.

¶22    Section 27-2-203, MCA, provides for a two-year period for the initiation of an action for relief on the grounds of fraud or mistake. The cause of action accrues upon discovery by the aggrieved party of the facts that constitute the fraud or mistake. Section 27-2-203, MCA. In *D'Agostino v. Swanson*, 240 Mont 435, 784 P.2d 919 (1990), the purchasers of real property brought an action to reform or rescind a property contract based on mistake. We determined that mutual mistake was the essence of the action and applied the two-year statute of limitations pertaining to actions seeking relief on the ground of mutual mistake. *D'Agostino*, 240 Mont. at 442, 784 P.2d at 923. Similarly, in *Naftco Leasing Ltd. v. Finalco, Inc.*, 254 Mont. 89, 92-93, 835 P.2d 728, 730-31 (1992), the plaintiffs filed an action to reform lease agreements based upon a mutual mistake discovered more than five years after executing the lease agreements. This Court cited *D'Agostino* and affirmed that § 27-2-203, MCA, barred the plaintiff's action.

7

¶23   HRDC is the aggrieved party in this case. Its counterclaim alleged a mutual mistake. The question arises, therefore, when HRDC learned of the mistake. The parties executed the loan agreement and note on February 26, 1998. The loan agreement provided a 13% interest rate. The promissory note and accompanying payment coupons provided a 0.13% interest rate. Johnson and Jordan testified that they separately discovered the mistake in March 2001. Stanley acknowledged the mistake in writing on July 20, 2001, and informed Johnson that approximately $16,000 remained due. Thus, HRDC discovered the mutual mistake no later than July 20, 2001. The two-year period prescribed in § 27-2-203, MCA, would have expired in 2003. *D'Agostino*, 240 Mont. at 442, 784 P.2d at 923. HRDC waited until March 27, 2006, to file its counterclaim based upon mutual mistake. The two-year limitations period contained in § 27-2-203, MCA, would have barred HRDC's counterclaim. *D'Agostino*, 240 Mont. at 442, 784 P.2d at 923.

¶24   The court deemed application of this two-year limitation period to constitute an undeserved windfall to Johnson in light of its conclusion that Johnson knew, or should have known, that the 13% interest rate set forth in the loan agreement applied. The court further pointed to the fact that HRDC exists to provide loans to high risk borrowers. These high risks naturally correspond to a higher interest rate as reflected in the 13% rate in the loan agreement.

¶25   M. R. Civ. P 8(c) provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . any other matter constituting an avoidance or affirmative defense." Rule 8(c) derives from "the same principles of fairness and notice which require a plaintiff to

set forth the basis of the [plaintiff's claim] . . . ." *Brown v. Ehlert*, 255 Mont. 140, 146, 841 P.2d 510, 514 (1992). Rule 8(c) is not absolute, however, as the court retains discretion to allow a defendant to amend pursuant to the terms of M. R. Civ. P. 15, as determined by our holding in *Keller v. Dooling*, 248 Mont. 535, 542, 813 P.2d 437, 441 (1991).

¶26    M. R. Civ. P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Rule 15(a) favors allowing amendments, but a trial court may justify denying a motion to amend on the grounds of "undue prejudice to the opposing party." *Lindey's v. Professional Consultants*, 244 Mont. 238, 242, 797 P.2d 920, 923 (1990). We agree with the District Court that justice required the amendment of HRDC's time barred counterclaim to an affirmative defense.

¶27    Johnson entered the loan agreement with the understanding that she would be required to repay the principal over a five-year period at a 13% interest rate. She signed the loan agreement that accurately reflected the 13% interest rate. She learned of the mistaken interest rate on the promissory note in 2001, before she had completed repayment of the loan. We cannot say that Johnson would suffer undue prejudice under these circumstances from the District Court's decision to amend HRDC's counterclaim to an affirmative defense.

¶28    *Whether the District Court properly denied Johnson's motion for partial summary judgment.*

¶29    Johnson premised her motion for partial summary judgment on the grounds that the statute of limitations had expired on HRDC's mutual mistake counterclaim. Our determination that the District Court correctly amended HRDC's counterclaim to an

9

affirmative defense also confirms the correctness of the District Court's decision to deny Johnson's motion for partial summary judgment on the issue of liability.

¶30 *Whether the District Court properly granted affirmative relief to HRDC on its counterclaim of mutual mistake when the court deemed the counterclaim to be an affirmative defense.*

¶31 Our conclusion that the District Court properly concluded that the interests of justice required it to convert HRDC's counterclaim to an affirmative defense raises the question of whether HRDC could use this affirmative defense as a vehicle to recover damages against Johnson. HRDC filed a counterclaim to reform the note to reflect a 13% interest rate based on a "scrivener's error."

¶32 Our general rule requires that a counterclaim, cross-claim, or third-party complaint for affirmative relief must comply with the applicable statute of limitations. *State ex rel. Egeland v. City Council*, 245 Mont. 484, 490, 803 P.2d 609, 613 (1990). We exempt from the statute of limitations a defensive claim where the defendant attempts to offset the amount that a plaintiff can recover, such as by recoupment, contribution, or indemnity. *Egeland*, 245 Mont. at 490, 803 P.2d at 613. HRDC's "affirmative defense" of a mutual mistake goes well beyond a defensive claim.

¶33 HRDC's mutual mistake counterclaim, as alleged in its answer, sought an award of the entire unpaid balance on Johnson's loan. HRDC's answer included a claim for "payment of the balance due on the promissory note plus allowable attorney's fees and costs." Thus HRDC's counterclaim comported with the general rule that a counterclaim presents a cause

10

of action that seeks affirmative relief. *Estate of Webster*, 920 S.W.2d 600, 606 (Mo. App. W.D. 1996); *Haven Federal Sav. & Loan v. Kirian*, 579 So. 2d 730, 733 (Fla. 1991).

¶34 This counterclaim suffered from HRDC's failure to raise it within the two-year period for the initiation of an action for relief on the grounds of fraud or mistake. Section 27-2-203, MCA. The District Court correctly converted HRDC's counterclaim to an affirmative defense. In doing so, however, the District Court cannot convert the counterclaim to an affirmative defense that seeks affirmative relief with bumping against the two-year statute of limitations set forth in § 27-2-203, MCA. *Egeland*, 245 Mont. at 490, 803 P.2d at 613. An affirmative defense properly seeks to defeat or avoid the other party's cause of action. *Webster*, 920 S.W.2d at 606; *Haven Federal Sav. & Loan*, 579 So. 2d at 733.

¶35 The District Court premised its award to HRDC of the unpaid balance of the loan on the "affirmative defense" of mutual mistake. Our decision in *Egeland* and § 27-2-203, MCA, precludes this outcome. HRDC can recover nothing beyond Johnson's last payment of March 5, 2003, as § 27-2-203, MCA, bars any further attempts by HRDC to recover. We therefore reverse this portion of the District Court's ruling. Conversely, Johnson is entitled to reconveyance of her property in light of HRDC's inability to collect any additional payments under this loan.

¶36 We also must reverse the District Court's award of attorney fees and costs in favor of HRDC. The court awarded attorney fees and costs to HRDC as the prevailing party in recovering the unpaid balance of Johnson's loan. The District Court erroneously awarded

11

this unpaid balance to HRDC. The award of the attorney fees and costs associated with recovering this unpaid balance cannot stand.

¶37 We remand to the District Court for entry of judgment in favor of HRDC on Johnson's claim for damages. We further remand for entry of an order by the District Court that HRDC issue a deed of reconveyance of Johnson's property to allow FMTC to release the deed of trust. The District Court further should order each party to bear its own fees and costs.


/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE


Justice James C. Nelson, concurring in part and dissenting in part.

¶38 I concur with the result of the Court's Opinion under Issue 3—i.e., that HRDC is precluded by § 27-2-203, MCA, from requiring Johnson to pay anything beyond her last payment of March 5, 2003, and that HRDC is barred from any further collection efforts. Opinion, ¶ 35. I respectfully dissent, however, from the Court's decision on Issues 1 and 2—

12

respectively, whether the District Court correctly converted HRDC's counterclaim of mutual mistake to an affirmative defense, and whether the District Court properly denied Johnson's motion for partial summary judgment.

¶39    As a preliminary matter, it is necessary to point out that HRDC did not bother to file a response brief in this appeal, even despite two granted requests for extensions of time in which to do so. Where an appellee does not appear by brief or argument, this Court will take the appellant's versions and positions as being correct if they are supported by the record. *Alden v. Board of Zoning Commrs.*, 165 Mont. 364, 365, 528 P.2d 1320, 1320 (1974). Here, Johnson's positions are well-supported by the record and should be taken as correct.

¶40    First, HRDC was aware of the "scrivener's error" in the promissory note no later than July 2001, but HRDC did not file its claim based on mutual mistake until March 2006, well beyond the two-year period of limitations prescribed by § 27-2-203, MCA.

¶41    Second, HRDC's "counterclaim" was just that: a counterclaim. HRDC set forth a claim for relief: payment of the balance due on the note. This constitutes a counterclaim, not an affirmative defense. *See* M. R. Civ. P. 8(a) ("A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."). Indeed, the Court so holds:

> HRDC's mutual mistake counterclaim, as alleged in its answer, sought an award of the entire unpaid balance on Johnson's loan. HRDC's answer included a claim for "payment of the balance due on the promissory note plus allowable attorney's fees and costs." Thus HRDC's counterclaim comported with the general rule that a counterclaim presents a cause of

13

action that seeks affirmative relief.

Opinion, ¶ 33.

¶42 Third, up until the District Court, entirely of its own accord, declared HRDC's counterclaim to be something other than it is, both Johnson and HRDC framed their respective arguments based on their shared understanding that HRDC's "counterclaim" was, in fact, a counterclaim. That's why HRDC presented an argument in its brief opposing Johnson's motion for partial summary judgment that its "claim" for reformation of the note pursuant to § 28-2-1611, MCA, was not barred by the statute of limitations—an argument that would have been unnecessary had HRDC's counterclaim actually been, in substance, an affirmative defense.

¶43 Fourth, § 27-2-203, MCA, states: "The period prescribed for the commencement of an action for relief on the ground of . . . mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the . . . mistake." Accordingly, HRDC's counterclaim was time-barred (*see* Opinion, ¶¶ 23, 35), and Johnson was entitled to judgment in her favor.

¶44 To avoid this legally correct (but apparently unpalatable) result, the District Court decided in its September 1, 2006 Memorandum and Order Denying Plaintiff's Motion for Partial Summary Judgment to treat HRDC's counterclaim as an affirmative defense. As grounds for this, the court cited M. R. Civ. P. 8(c), which states: "When a party has mistakenly designated a defense as a counterclaim . . . , the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Evidently, the

14

court believed that justice required it to re-designate HRDC's counterclaim as an affirmative defense because Johnson otherwise would receive an "undeserved windfall." Opinion, ¶ 24. This Court agrees, citing not only Rule 8(c), but also Rule 15(a), which states that a party may amend its pleading by leave of court and that leave "shall be freely given when justice so requires." Opinion, ¶¶ 25-26.

¶45 There are two obvious problems with this approach. First, HRDC, who was represented by counsel throughout the proceedings in the District Court, never sought leave to amend its pleading. Nor did HRDC ask the District Court to convert its counterclaim into an affirmative defense. Second, and most importantly, a counterclaim may not be re-designated or amended to be an affirmative defense if it is not, in fact, an affirmative defense. Again, Rule 8(c) states when a party has "mistakenly designated" a defense as a counterclaim, the court shall treat the pleading as if there had been a proper designation, if justice so requires. Here, HRDC's counterclaim was not "mistakenly designated." It was, in fact, a claim for relief. Thus, there is no basis in law or in fact for treating it as an affirmative defense under Rule 8(c) or amending HRDC's pleading (sua sponte) to state an affirmative defense, rather than a counterclaim, under Rule 15(a).

¶46 It is difficult to understand the Court's holdings under Issues 1 and 2, given that the Court essentially agrees with all of the foregoing points. Specifically, in its analysis under Issue 3, the Court states that "the District Court cannot convert the counterclaim to an affirmative defense that seeks affirmative relief with bumping against the two-year statute of limitations set forth in § 27-2-203, MCA." Opinion, ¶ 34. But if the "counterclaim" were in

fact an "affirmative defense," then the statute of limitations set forth in § 27-2-203, MCA, would not apply. By its terms, this statute applies to a "cause of action." *See* § 27-2-203, MCA. Thus, by applying this statute to the case at hand, the Court is tacitly conceding that HRDC's counterclaim is, in fact, a "cause of action," not an affirmative defense.

¶47 Ultimately, what the Court does here is (1) call HRDC's counterclaim an "affirmative defense" for purposes of ruling against Johnson regarding the terms of the note and then (2) treat HRDC's counterclaim as a "cause of action" for purposes of ruling against HRDC regarding the unpaid balance of the note. While this result may seem fair or equitable under the circumstances, it is legally untenable.

¶48 In this case, the trial court decided that "justice" required it—sua sponte—to bail out HRDC from its own mistakes, sloppy document preparation, and hard-line business practices. I simply cannot agree that this is a proper function of a district court. HRDC either chose to take no action, or simply neglected to do so, when it became aware that the promissory note contained a glaring mistake. It was not the District Court's role to rescue HRDC by interceding, sua sponte, on that party's behalf during the course of this litigation. HRDC is a corporation which is in the business of making loans. It caused its own problems. If HRDC is an "aggrieved" party, as the Court asserts in ¶ 23, it is so because of its own actions or inaction, not anything Johnson did or failed to do.

¶49 Given the above, I concur in the result the Court reaches under Issue 3, but I dissent from the Court's holdings under Issues 1 and 2. I would hold that Johnson was entitled to partial summary judgment on the issue of liability. Accordingly, I would reverse the District

16

Court's Memorandum and Order Denying Plaintiff's Motion for Partial Summary Judgment and remand for further proceedings. In addition, I would award Johnson her attorney's fees and costs as the prevailing party at trial and on appeal, and I would order the computation of those on remand.

¶50    I concur and dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins the concurrence and dissent of Justice James C. Nelson.

/S/ PATRICIA COTTER

17