FILED

08/19/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0027

DA 24-0760

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 184

MONARCH HEATING AND COOLING, LLC,

        Plaintiff and Appellee,

  v.

PETRA, INC.,

        Defendant and Appellant,

BOZEMAN WEST APARTMENTS LP;
SACCOCCIA LANDS III LLC;
BCRH AVION VENTURE LLC;
STOCKMAN BANK OF MONTANA;
WCW OLYMPUS BOZEMAN LLC; and
JOHN DOES 1-10,

        Defendants.

_____

BOZEMAN WEST APARTMENTS LP,
SACCOCCIA LANDS III LLC, and
PETRA, INC.,

        Counterclaimants,

  v.

MONARCH HEATING AND COOLING, LLC,

        Counter-Defendant.

_____

BOZEMAN WEST APARTMENTS LP;
And SACCOCCIA LANDS III LLC,

        Cross-Claimants

  v.

PETRA, INC.,

        Cross-Defendant.

_____

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 24-126
Honorable Andrew Breuner, Presiding Judge

COUNSEL OF RECORD:

     For Appellants:

          Edward J. Guza, Lance F. Carl, E.J. Guza & Associates, Bozeman, Montana

     For Appellee Petra, Inc.:

          Cherche Prezeau, Jackson Maynard, Christensen & Prezeau, PLLP, Helena, Montana

          Jon A. Wilson, Nathan A. Burke, Brown Law Firm, P.C., Billings, Montana

     For Defendants Bozeman West Apartments, LP, and Saccoccia Lands III, LLC:

          Trent Baker, Datsopoulos, MacDonald & Lind, PC, Missoula, Montana

_____

          Submitted on Briefs:  May 7, 2025

          Decided:  August 19, 2025

Filed:

_____
          Clerk

2

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Petra, Inc. ("Petra") appeals from the Eighteenth Judicial District Court, Gallatin County's December 10, 2024 order denying its motion to stay proceedings and compel arbitration. Petra appeals the District Court's determination that it had waived its right to compel arbitration. We affirm.

¶2 We restate the issue on appeal as follows:

> *Whether the District Court erred when it determined that Petra had waived its right to compel arbitration.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 13, 2021, Petra contracted with Bozeman West Apartments LP to serve as the primary contractor on an apartment complex building project. On July 23, 2021, Petra entered into a subcontract with Monarch Heating and Cooling, LLC ("Monarch") for Monarch to install the HVAC systems in the complex. Article 22.2 of the subcontract between Petra and Monarch contained an arbitration clause providing that "[a]ll other claims, disputes, and other matters in question between [Petra] and [Monarch] arising out of, or relating to, the Main Contract or this Subcontract . . . shall be decided by arbitration at [Petra's] sole and exclusive option." Monarch asserts that it began performance of the subcontract immediately, incurring costs in the process.

¶4 The relationship between Petra and Monarch deteriorated over the next three years, and on February 2, 2024, Monarch filed suit against Petra,[1] alleging breach of contract,

---

[1] Monarch also named several other defendants in its Complaint and Amended Complaint, but those defendants are not involved in this appeal.

3

breach of the covenant of good faith and fair dealing, negligent misrepresentation, unjust enrichment, and a violation of Montana's Prompt Payment Act. Monarch filed an Amended Complaint on April 25, 2024, and served it on Petra's registered agent on May 1, 2024. For reasons not clear from the record, Petra's registered agent did not forward the Amended Complaint on to Petra, and Petra did not file a timely answer to Monarch's Amended Complaint. On May 29, 2024, the District Court entered a default against Petra at Monarch's request.

¶5      After learning that Petra's agent had not provided Petra with the Amended Complaint, Monarch served Petra at its offices in Idaho on July 1, 2024. At Petra's request, Monarch stipulated to setting aside the entry of default and on July 25, 2024, Monarch and Petra filed a joint Stipulated Motion to Set Aside Entry of Default, which the District Court granted on July 30, 2024. Petra filed its Answer to Monarch's Amended Complaint, Counterclaim, and Request for Jury Trial on August 20, 2024. The Answer included 14 affirmative defenses, including "any and all affirmative defenses alleged by any other party." Monarch filed an answer to Petra's counterclaims on September 9, 2024. Petra filed an Amended Answer on September 10, 2024, which contained 16 affirmative defenses, including that "Monarch's claims in this litigation are subject to a valid and binding agreement to arbitrate."

¶6      On October 25, 2024, Petra moved to stay the proceedings and compel arbitration, citing Article 22.2 of the subcontract. The District Court denied Petra's motion on December 10, 2024. In its order, the District Court reasoned that Petra had "acted in a

deliberate manner that was inconsistent with invoking its right to demand arbitration" based, in part, on the facts that "Monarch did not have the right to invoke the arbitration requirement," "Petra secured and then filed its stipulated motion to set aside default" without asserting the right, and it did not assert the right until "nearly six (6) months after it was lawfully served with" the Amended Complaint. The District Court determined that Petra's delay in asserting its arbitration right prejudiced Monarch based on the costs Monarch incurred after it "was compelled to move for default; arrange for a second service of its complaint in Idaho; stipulate to setting aside default; wait nearly four (4) months for an answer to its [Amended Complaint]; be served with counterclaims; answer counterclaims; and then litigate the present motion to compel arbitration."

## STANDARD OF REVIEW

¶7     We review district court rulings on motions to compel arbitration de novo for correctness under the governing standards of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–402, or the Montana Uniform Arbitration Act ("MUAA"), Title 27, chapter 5, MCA, as applicable. *Peeler v. Rocky Mountain Log Homes Can., Inc.*, 2018 MT 297, ¶ 11, 393 Mont. 396, 431 P.3d 911.

## DISCUSSION

¶8     *Whether the District Court erred when it determined that Petra had waived its right to compel arbitration.*

¶9     A party asserting that another party has waived the right to arbitrate bears the burden of demonstrating (1) the other party's knowledge of the right to arbitrate, (2) acts by the other party that are inconsistent with the right to arbitrate, and (3) resulting prejudice.

5

*Mont. Pub. Emps. Ass'n v. City of Bozeman*, 2015 MT 69, ¶ 15, 378 Mont. 337, 343 P.3d 1233 (*MPEA*) (citing *Downey v. Christensen*, 251 Mont. 386, 389, 825 P.2d 557, 558 (1992)).  At the outset, Monarch asserts that we ought to modify the *Downey* factors in light of the United States Supreme Court's recent decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708 (2022).  Petra responds that *Morgan* is inapplicable because it concerned the proper factors for courts to consider when deciding a motion to compel arbitration under the FAA, and this case is governed by the MUAA.

¶10   Because we ultimately agree with the District Court's determination that Monarch met its burden under *Downey*, we need not address *Morgan's* application to this case, and we decline to consider Monarch's argument on this point.  The parties do not dispute that Monarch met the first *Downey* factor because Petra concedes that it has always been aware of its option to insist on arbitration of Monarch's claims.  Therefore, the outcome of this case hinges on whether Petra acted inconsistently with its right to insist on arbitration, and whether it would prejudice Monarch to grant Petra's motion.

¶11   Petra argues that the District Court erred when it determined that Petra acted inconsistently with its right to arbitrate because the District Court based its determination on Petra's *inaction* rather than inconsistent *action*.  In *MPEA*, we determined that MPEA had not acted inconsistently with its right to arbitrate by failing to bring an action to compel arbitration for over four years.  *MPEA*, ¶ 18.  Petra's reliance on *MPEA* is misplaced.  In *MPEA*, MPEA's first action out of the gate was to file a case specifically to compel arbitration.  *MPEA*, ¶ 4.  MPEA not only acted consistently with its right to insist on

arbitration from the start of the case, it filed the case in order to enforce that right. As the District Court noted, Petra did not insist on its right to arbitrate until six months after it was lawfully served and almost four months after it was served at its Idaho headquarters.

¶12     Petra asserts that the actions it did take once it was aware of the case were at least as consistent with its insistence on its right as the actions we found sufficient in *Downey* itself. In opposing the motion to compel arbitration in *Downey*, the Downeys asserted four inconsistent actions demonstrated waiver:

> (1) [The opposing parties'] filing of formal answers rather than motions to dismiss or stay proceedings; (2) [opposing parties'] filing of a counterclaim; (3) [opposing parties'] participation in preparing a discovery schedule; and (4) [opposing parties'] participation in discovery before they filed motions to compel arbitration.

*Downey*, 251 Mont. at 390, 825 P.2d at 558. Petra asserts that it took even less inconsistent action than the opposing parties in *Downey* because it did not engage in the discovery process at all, even though its first response after the default was set aside to file an answer and counterclaims. But Petra leaves out of its narrative a critical distinction between this case and *Downey*—the Stipulated Motion to Set Aside Entry of Default. Monarch asserts, and Petra does not dispute, that Petra did not mention its intent to compel arbitration when it reached out to Monarch to secure its consent to set aside the default. Petra asserts that its failure to mention its intent to compel arbitration is immaterial because Monarch and the District Court both agreed that there was good cause to set aside the default. But we cannot know what arguments Monarch might have made against setting aside the default since Monarch did not feel the need to make them because Petra did not alert Monarch of

7

its intent to compel arbitration when it secured Monarch's stipulation. What we do know is that Petra sought to reenter the litigation with no mention of its intent to leave it again by compelling arbitration.

¶13 Yet another factor distinguishing this case from *Downey* is the Answer Petra filed almost a month later. In *Downey*, we found that the opposing parties' explicit invocation of arbitration in their answers excused their later participation because it put the Downeys on notice at the outset that the opposing parties intended to exercise their right. *Downey*, 251 Mont. at 390, 825 P.2d at 558. Although Petra's Answer identified 14 affirmative defenses it intended to rely on, the subcontract's arbitration clause was not among them. Petra asserts that the Answer implicitly included an arbitration defense by incorporating "any and all affirmative defenses alleged by any other party," because its co-defendants had asserted "[a]ll affirmative defenses set forth in M. R. Civ. P. 8(c)(1)," which includes arbitration. Petra's three-layered incorporation-by-reference argument hardly evinces a clear intent to invoke arbitration at a later date. Petra evidently did not think so either because it filed an Amended Answer in order to explicitly list arbitration among its defenses. The District Court did not err when it determined that Petra had acted inconsistently with its right to arbitrate because Petra sought to reenter the litigation with no mention of its intent to leave the litigation at a later date and reinforced that position with its subsequent Answer.

¶14 Petra argues that the District Court erred by determining that its invocation of its right to arbitrate would prejudice Monarch. We have found prejudice in this context where

8

the non-moving party has been forced to "spend both time and money in trial preparation," and lost a tactical advantage as a result of the moving party's actions inconsistent with its arbitration right. *Holm-Sutherland Co. v. Town of Shelby*, 1999 MT 150, ¶ 33, 295 Mont. 65, 982 P.2d 1053. There is no question that Monarch was forced to spend time and money responding to Petra's counterclaims, as evidenced by its September 9, 2024 answer. But the most significant prejudice consideration is Monarch's voluntary surrender of its default when it was under the impression that Petra would engage in the litigation. By stipulating to set aside the default, Monarch surrendered its right to argue under M. R. Civ. P. 55(c) that it would be prejudiced. While we may never know what Monarch might have argued had it known that Petra intended to raise the arbitration provision, there is no dispute that Monarch surrendered Petra's default before Petra advised that it intended to seek to compel arbitration. The District Court did not err when it determined that Petra's attempt to compel arbitration would prejudice Monarch.

## CONCLUSION

¶15 The District Court did not err when it determined that Petra had waived its right to compel arbitration after Petra reentered the litigation without asserting this right in either its Stipulated Motion to Set Aside Entry of Default or its Answer.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/JIM RICE

9

Chief Justice Cory J. Swanson, dissenting.

¶16 I dissent from the holding that Petra waived its right to enforce arbitration. Based on our prior caselaw, in which we have considered this issue multiple times, Petra's actions are in the camp of cases where we declined to find a waiver.

**Prejudice as a factor in waiving arbitration**

¶17 Before addressing Petra's non-waiver, I must first explain that the Court correctly retained the element of prejudice when examining waiver of a right to arbitrate, but did so for the wrong reasons. The United States Supreme Court's holding in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708 (2022), requires us to examine our interpretation of the Montana Uniform Arbitration Act ("MUAA") because it is based on the federal interpretation of the Federal Arbitration Act ("FAA"). Because *Downey* was based upon now-overruled federal caselaw, it is not sufficient to merely rely upon our MUAA analysis in *Downey*. Opinion, ¶ 9. To continue to analyze prejudice as a waiver factor, we must confirm we treat waiver of arbitration the same as waiver of other contractual rights.

¶18 In *Morgan*, a unanimous United States Supreme Court resolved a split among federal circuit courts in interpreting the FAA, holding the federal circuit courts "may not create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" *Morgan*, 596 U.S. at 417, 142 S. Ct. at 1712 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). Consequently, federal courts should consider the waiver standard according to ordinary rules analyzing whether the person who holds

10

the right intentionally relinquished or abandoned it. *Morgan*, 596 U.S. at 417, 142 S. Ct. at 1713. These traditional rules under federal law do not include consideration of prejudice to the other party. *Morgan*, 596 U.S. at 417, 142 S. Ct. at 1713 (citation omitted).

¶19 The Ninth Circuit, one of the federal circuits that had included prejudice in its waiver analysis, followed *Morgan* and excised prejudice from its arbitration waiver test when it decided *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011 (9th Cir. 2023). Post-*Morgan*, "the party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong*, 59 F.4th at 1015.

¶20 As we explained in *Peeler v. Rocky Mountain Log Homes Canada, Inc.*, we have consistently followed federal interpretation of the FAA when interpreting the MUAA. 2018 MT 297, ¶¶ 12–13, 393 Mont. 396, 431 P.3d 911; *see also Southland Corp. v. Keating*, 465 U.S. 1, 16–17, 104 S. Ct. 852, 861 (1984) (substantive provisions of FAA binding on state courts pursuant to 9 U.S.C. § 2 and Supremacy Clause of United States Constitution but subject to state law procedural rules); *Keystone, Inc. v. Triad Sys. Corp.*, 1998 MT 326, ¶ 23, 292 Mont. 229, 971 P.2d 1240 ("FAA generally preempts state law which restricts the application of arbitration agreements. However, when a state law does not conflict with the FAA so as to frustrate the objectives of Congress, it is not necessarily preempted.") (internal citations omitted); *Lenz v. FSC Sec. Corp.*, 2018 MT 67, ¶ 29, 391 Mont. 84, 414 P.3d 1262. That includes, ever since *Downey*, analyzing waiver under the Ninth Circuit's pre-*Morgan* test: "[a] party must demonstrate: (1) knowledge of the

existing right to compel arbitration; (2) acts inconsistent with the right to arbitrate the dispute; and (3) prejudice to the party resisting arbitration." *Downey*, 251 Mont. at 389, 825 P.2d at 559 (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

¶21    It is clear our inclusion of the prejudice factor for waiving arbitration under the MUAA originated with the now-defunct federal court interpretation of the FAA. Now having been invalidated by the United States Supreme Court, we err in holding to the prejudice factor, unless we also require prejudice when considering waiver of any other contractual right. This rule arises from the last time we considered a United States Supreme Court interpretation of the FAA and declined to follow it. In *Doctor's Associates v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652 (1996), the Court overruled our decision in *Casarotto v. Lombardi*, 268 Mont. 369, 886 P.2d 931 (1994). The Court invalidated § 27-5-114(4), MCA (1995), holding Montana's statute was preempted by the FAA. *Doctor's Assocs., Inc.*, 517 U.S. at 688, 116 S. Ct. at 1657. The Court held, "Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc.*, 517 U.S. at 687, 116 S. Ct. at 1656 (citation omitted) (emphasis in original). This is because FAA mandates contracts providing for arbitration rights "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract . . . ." 9 U.S.C. § 2 (emphasis added). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without

12

contravening § 2." *Doctor's Assocs., Inc.*, 517 U.S. at 687, 116 S. Ct. at 1656 (citation omitted) (striking Montana statute requiring arbitration provisions to be "typed in underlined capital letters on the first page of a contract").

¶22   Indeed, other states have modified their arbitration waiver standards to eliminate the prejudice prong, following *Morgan*. *See CNU of Alabama, LLC v. Cox*, No. SC-2024-0060, ___ So. 3d ___, 2024 WL 4716159, at *6 (Ala. Nov. 8, 2024) ("*Morgan* thus requires that [Alabama] no longer consider prejudice in [its] waiver analysis for arbitration provisions governed by the FAA."); *Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562, 583, 551 P.3d 1123, 1136 (2024) (finding there is no basis for an arbitration-specific prejudice requirement in California law); *Kingery Constr. Co. v. 6135 O St. Car Wash, LLC*, 312 Neb. 502, 514, 979 N.W.2d 762, 770 (2022) (holding *Morgan* requires Nebraska courts to discard their arbitration-specific prejudice requirement because it is based on now erroneous federal caselaw interpreting the FAA). One argument for us to follow suit is the MUAA instruction for Montana to interpret the statute uniformly with other states. Section 27-5-112, MCA; *accord May v. First Nat. Pawn Brokers, Ltd.*, 269 Mont. 19, 25, 887 P.2d 185, 189 (1994).

¶23   But we should not follow other states or the federal interpretation of arbitration waivers if our case law generally includes prejudice as a factor in analyzing waivers of any other contractual right. *See Shake Out, LLC v. Clearwater Constr., LLC*, 172 Idaho 622, 628, 535 P.3d 598, 604 (2023) (Idaho maintained a prejudice prong under Idaho Uniform Arbitration Act because, "[u]nlike federal law, Idaho law has historically required

13

detrimental reliance in order for a party to succeed in asserting waiver."). Or as Justice Kagan wrote, "The policy is to make arbitration agreements as enforceable as other contracts, but not more so." *Morgan*, 596 U.S. at 418, 142 S. Ct. at 1713 (citation omitted; internal quotations omitted).

¶24 Following *Downey,* we have uniformly analyzed arbitration waivers including the prejudice prong. We have considered waivers in non-arbitration cases, also including the factor of whether the other party was prejudiced by the waiver. Essentially, over the past two decades, we merged the arbitration rule and the non-arbitration rule. *See Kratzer v. Hardy Constr. Co.*, 2025 MT 140, ¶ 16, 422 Mont. 492, 571 P.3d 614 (citing *Peeler*, ¶ 22) (*Peeler* deals with arbitration, *Kratzer* deals with a general waiver); *see also Dodds v. Tierney*, 2024 MT 48, ¶ 23, 415 Mont. 384, 544 P.3d 857 (citing *Edwards v. Cascade Cnty.*, 2009 MT 229, ¶ 30, 351 Mont. 360, 212 P.3d 289 (citing *VanDyke Const. Co. v. Stillwater Mining Co.*, 2003 MT 279, ¶ 15, 317 Mont. 519, 78 P.3d 844)) (*Dodds*, a non-arbitration case, cites *Edwards*, a non-arbitration case, which cites *VanDyke,* an arbitration case.).

¶25 Historically, when considering waiver as a defense, we have included prejudice as a factor, equating implied waiver with estoppel. The implied waiver doctrine "requires a detrimental reliance by the party who is led by the conduct to believe a waiver has occurred. Thus the doctrine of 'implied waiver' is akin to estoppel." *Reiter v. Yellowstone Cnty.*, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981) (citing *Stanolind Oil & Gas Co. v. Guertzgen*, 100 F.2d 299, 302 (9th Cir. 1939)); *see also Benson v. Diverse Computer*

*Corp.*, 2004 MT 114, ¶ 30, 321 Mont. 140, 89 P.3d 981 ("[I]mplied waiver requires a detrimental reliance by the party who is led by the conduct to believe a waiver has occurred.") (citing *Reiter*, 192 Mont. at 202, 627 P.2d at 850).

¶26 The foregoing cases illustrate how we do not treat waiver of arbitration rights differently from waiver of other contractual rights. Therefore, under *Morgan*, we should continue to include prejudice against the other contracting party as a factor when analyzing waiver of any contractual right, including arbitration. This supports uniformity in our caselaw and is consistent with our inquiry into detrimental reliance in cases involving implied waiver.

**Petra did not act inconsistently with its right to arbitrate**

¶27 Having said that, I dissent from the Court's conclusion that Petra acted inconsistently with its right to arbitrate. We have repeatedly considered the issue of waiving arbitration rights, and our prior cases tend to fall into two distinct camps. One camp shows substantial conduct clearly inconsistent with the right to arbitrate, where we have held the right to arbitrate was waived. The other group of cases contains mild bumps in the road on the way toward arbitration, usually at the beginning of a dispute, but where we held the party invoking the right to compel arbitration had not waived it. This case clearly falls in the latter group.

¶28 *Downey* is the benchmark case on this issue. There, a franchisee sued a franchisor and the franchisor's employee for breach of contract. *Downey*, 251 Mont. at 388, 825 P.2d at 558. Although the franchisor asserted its right to arbitrate as an affirmative defense in

its answer, both parties subsequently conducted discovery, and one defendant filed a counterclaim against the plaintiff for breach of contract. *Downey*, 251 Mont. at 388, 825 P.2d at 558. The franchisor then filed a motion to compel arbitration, which the district court denied, holding the defendants had waived the right to arbitrate by participating in discovery and filing a counterclaim. *Downey*, 251 Mont. at 391, 825 P.2d at 560. We reversed the district court. "Answering on the merits, asserting a counterclaim, and participating in discovery, without more, is insufficient to constitute waiver." *Downey*, 251 Mont. at 391, 825 P.2d at 560 (citation omitted). We held, "it was not unreasonable nor inconsistent with its right to arbitrate, for [the franchisor] to engage in discovery to determine whether the [franchisee] contested the validity of the entire agreement or merely the arbitration clause in the agreement." *Downey*, 251 Mont. at 390, 825 P.2d at 560. In contrast, we noted the employee of the franchisor "sought more information than necessary to determine the existence of the right to arbitrate" which "was excessive and inconsistent with [employee's] right to arbitrate . . . ." *Downey*, 251 Mont. at 391, 825 P.2d at 560.

¶29     In contrast, in *Holm-Sutherland Co. v. Town of Shelby*, a party actively participated in pretrial litigation in two different district courts for multiple years before ultimately filing a motion to compel arbitration. 1999 MT 150, ¶ 21, 295 Mont. 65, 982 P.2d 1053. Before being sued in Toole County, the company demanded arbitration, then acquiesced to a temporary injunction while the United States Supreme Court considered and ultimately struck part of Montana's law governing arbitration clauses in *Casarotto*. *Holm-Sutherland Co.*, ¶ 4. But Holm-Sutherland separately filed suit in Cascade County against the Town

16

of Shelby and its engineering firm, and demanded a jury trial, with no assertion of its right to compel arbitration. *Holm-Sutherland Co.*, ¶ 5. The Tool County and Cascade County cases were consolidated and set for jury trial three different times. *Holm-Sutherland Co.*, ¶ 5. Mere weeks before the third jury trial setting, Holm-Sutherland filed a motion to compel arbitration. *Holm-Sutherland, Co.*, ¶ 5. Not surprisingly, we held it had acted inconsistently with its right to compel arbitration, and waived its arbitration right. *Holm-Sutherland Co.*, ¶ 31.

¶30 In *Montana Pub. Employees' Ass'n v. City of Bozeman*, we concluded a party that initially pled the right to arbitrate, but then delayed for four years before demanding to exercise the right, did not waive its arbitration right. 2015 MT 69, ¶ 18, 378 Mont. 337, 343 P.3d 1233 [hereinafter *MPEA*]. During this period, "MPEA did not act inconsistently with its right to arbitrate in this case—it just did not act." *MPEA*, ¶ 18. Because "MPEA never litigated this dispute except to seek to compel arbitration," we concluded it did not waive arbitration. *MPEA*, ¶ 18.

¶31 Then in *Peeler*, we held the defendant did not act inconsistently with the right to arbitrate. *Peeler*, ¶ 24. There, a homeowner grew dissatisfied with a home builder's progress, and the parties engaged in substantive pre-litigation efforts to resolve the owner's concerns. *Peeler*, ¶ 5. When those failed, Peeler sued and declared the contract void. *Peeler*, ¶ 5. After being served with the complaint, Rocky Mountain filed a motion demanding dismissal and compelling arbitration. *Peeler*, ¶ 5. Peeler argued that under the terms of the contract Rocky Mountain had waived its right to arbitrate because the contract

required it to invoke arbitration within 30 days of the dispute arising, which was long before the litigation had even been filed. *Peeler*, ¶¶ 7, 24. We held for Rocky Mountain, declining to find a waiver by its pre-litigation efforts to resolve the dispute. The timing of Rocky Mountain's arbitration motion indicated, "At most, the Defendants failed to demand arbitration until the need definitely arose—when [the plaintiff] sued them in disregard of the arbitration agreement." *Peeler*, ¶ 24.

¶32 Here, Monarch argues Petra performed two actions inconsistent with its right to arbitrate, neither of which are persuasive. The first concerns Petra's default judgment, and more on point, its communication with Monarch to set aside the default judgment. After the parties learned Petra's registered agent had not notified it of being served with a lawsuit, they conferred and stipulated to set aside the default judgment. The court record indicates a lack of communication regarding arbitration: Petra neither affirmatively informed Monarch it would seek to compel arbitration, nor did it affirmatively communicate waiver during this period. Monarch argues it would not have agreed to set aside the default if it had known about Petra's intent to compel arbitration. But we find nothing in the record that constitutes an act or statement by Petra that it was waiving arbitration. At bottom, we are left with an *absence* of communication about the waiver. As we held in *MPEA*, Petra "did not act inconsistently with its right to arbitrate in this case—it just did not act." *MPEA*, ¶ 18. That is insufficient to find a waiver. Furthermore, Petra's timing of asserting arbitration only after the litigation was restarted is similar to Rocky Mountain's assertion of arbitration only after it was hauled into court. *Peeler*, ¶ 24.

18

¶33 Second, Petra asserted a counterclaim for breach of contract and failed to assert the affirmative defense of arbitration when it filed its original answer after the default had been set aside. Petra then communicated to Monarch it intended to arbitrate and subsequently filed an amended answer asserting arbitration within the 21 days allowed for amendment of pleadings as a matter of right.

¶34 Petra did not waive its affirmative defense by omitting it from its original answer but pleading it in its amended answer filed as a matter of right. Arbitration is pleaded as an affirmative defense, raised in the responsive pleading. *See Downey*, 251 Mont. at 390, 392, 825 P.2d at 560 (relying, in part, on defendant raising arbitration as an affirmative defense); *cf.* M. R. Civ. P. 8(c)(1) ("arbitration and award" as an affirmative defense). Petra did so, filing an amended answer as of right within 21 days of its original, and before Monarch filed an answer to Petra's counterclaim. *See* M. R. Civ. P. 15(a)(1). In between filing these pleadings, Petra did not take any other action except to send a letter to Monarch advising that it would amend the answer to include arbitration.

¶35 Petra's omission of an affirmative defense from the original answer, but inclusion in the amended answer when filed as a matter of right, does not waive its affirmative defense. Under our rules, only a few defenses are waived if not immediately raised. A party waives lack of personal jurisdiction, improper venue, or insufficient service of process if these defenses are not raised by motion, in a responsive pleading, or *in an amended responsive pleading allowed as a matter of right* within 21 days under Rule 15(a). M. R. Civ. P. 12(b)(2)–(5), (h)(1); *accord Garza v. Forquest Ventures, Inc.*, 2015 MT 284,

19

¶ 44, 381 Mont. 189, 359 P.3d 189.  Other affirmative defenses must be raised in any pleading or responsive pleading, by motion, or at trial.  M. R. Civ. P. 12(h)(2).  Thus, even the most perishable affirmative defenses would have been timely asserted in this case if pled in Petra's amended answer filed as of right under Rule 15(a)(1), before Monarch's answer to the counterclaim had been filed.

¶36    Beyond the immediacy requirements for specific affirmative defenses in Rule 12(h), we have generally held affirmative defenses must be raised in a timely manner, or they are waived.  "Furthermore, it is well settled in Montana that affirmative defenses are waived if not raised timely."  *Brown v. Ehlert*, 255 Mont. 140, 146, 841 P.2d 510, 514 (1992) (citation omitted).   "An affirmative defense is generally waived if not set forth affirmatively."   *Nitzel v. Wickman*, 283 Mont. 304, 312, 940 P.2d 451, 456 (1997) (citations omitted) (affirming district court's holding defendant did not raise an affirmative defense because she never pled it or sought to amend her answer to include it).  This is necessary for fairness and notice to the opposing party.  *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 55, 353 Mont. 28, 220 P.3d 1 (quoting *Brown*, 255 Mont. at 146, 841 P.2d at 514).   But affirmative defenses may be asserted through amendments to pleadings, not solely at the outset.  "Rule 8(c) is not absolute; a district court may allow a defendant to amend its answer to include an affirmative defense pursuant to Rule 15."  *Keller v. Dooling*, 248 Mont. 535, 542, 813 P.2d 437, 441 (1991); *Johnson v. District VII*, 2009 MT 86, ¶ 25, 349 Mont. 529, 204 P.3d 714.

¶37 Petra asserted its affirmative defense of arbitration within the pleading stage where it was expressly permitted to do so. That is not conduct indicative of waiver. Compared to all the other arbitration waiver cases we have considered, Petra acted consistently with asserting its right to seek arbitration. The Court errs in affirming the District Court.

¶38 Beyond the pleading matter, the District Court erroneously faults Petra for delaying its answer by six months. That delay was indisputably due to Petra's registered agent failing to inform Petra it had been sued, hence the default judgment entered against Petra. If a district court found good cause to grant the motion to set aside the default, then it should not punish the defendant for the time lapse between original service and its answer. If the theory of setting aside the default was Petra's lack of awareness of the lawsuit, it is clearly erroneous for the District Court to then hold the delay against Petra and consider its conduct inconsistent with its right of arbitration.

¶39 Nor is a six-month delay excessive when considering our caselaw. Time alone is not a factor absent other inconsistent actions supporting waiver. We noted so in *MPEA*, where, during a four-year delay, MPEA "did not act inconsistently with its right to arbitrate in this case—it just did not act." *MPEA*, ¶ 18. Similarly here, at best, it could be said Petra did not act on its right to arbitrate until it needed to do so in its answer. *See Peeler*, ¶ 24 ("[T]he Defendants failed to demand arbitration until the need definitely arose . . . .").

¶40 Additionally, default judgment must be settled before compelling arbitration becomes an issue. If the default judgment was not vacated, there would be no need to discuss arbitration. In *Downey*, we did not fault the defendant who engaged in discovery

21

before seeking to compel arbitration, as the discovery was limited to establishing whether the defendant can compel arbitration in a fraudulent inducement case. *Downey*, 251 Mont. at 391, 825 P.2d at 560. It was necessary for the defendant to establish whether the plaintiff disputed the validity of the entire agreement. *Downey*, 251 Mont. at 391, 825 P.2d at 560. Here, Petra sought to set aside the default before invoking arbitration because arbitration would have no binding effect and would not occur if the dispute was settled by default judgment.

¶41 Finally, I agree with Petra's argument that its pleading of a counterclaim is not indicative of waiving arbitration. Petra was not the original plaintiff, it was the defendant. In preparing its defense strategy, it faced a use-it-or-lose-it conundrum regarding counterclaims. It pled the counterclaim, which we have held is not hostile to preserving one's right to arbitration. "Answering on the merits, asserting a counterclaim, and participating in discovery, without more, is insufficient to constitute waiver." *Downey*, 251 Mont. at 391, 825 P.2d at 560.

¶42 I would hold Petra did not waive its right to arbitrate and remand back to the District Court for entry of an order enforcing Petra's right to engage in arbitration.

/S/ CORY J. SWANSON